# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TRAVIS LEE PADGETT, | No. 51081-2-II |
| Appellant/Cross-Respondent | |
| v. | |
| DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant | |

SUTTON, J. — This appeal arises from inmate Travis Lee Padgett's Public Records Act request (PRA)[1] to the Department of Corrections (DOC) for alleged PRA violations related to his request for his telephone records. Padgett appeals, arguing that the trial court erred by failing to find that the DOC acted in bad faith and denying his motion for PRA penalties. He also argues that the trial court erred by not ruling that the DOC also violated the PRA when it failed to conduct an adequate search for his account statement and balance record (ASB record). The DOC cross appeals the trial court's denial of its CR 26(g) motion for sanctions against Padgett.

We hold that DOC did not act in bad faith. Because the trial court concluded that DOC had violated the PRA by failing to provide Padgett with the fullest assistance on his ASB record request, we need not address whether DOC also violated the PRA by failing to conduct a reasonable search for the ASB record because that issue is moot. Thus, we affirm the trial court's summary judgment order that DOC had violated the PRA and its order denying PRA penalties.

---

[1] Ch. 42.56 RCW.

We also hold that the trial court did not have a complete record at the time it made its CR 26(g) ruling and remand to the trial court to make a CR 26 violation determination based on its January 12, 2018 order.

## FACTS

### I. BACKGROUND FACTS

#### A. THE INMATE TELEPHONE SYSTEM

Padgett has been housed at the DOC's Coyote Ridge Corrections Center (CRCC) and the Airway Heights Corrections Center.

The DOC provides telephone services to inmates incarcerated in its facilities which allows the inmates to call their families, friends, and other individuals in the community. The DOC contracts with a third party vendor, Global Tel Link Corporation (GTL), to operate the telephone system and maintain the telephone records for inmates housed at DOC's facilities. GTL provides, installs, owns, and maintains the equipment and network associated with the inmate telephone system. If a facility has problems, the DOC contacts GTL who then addresses the issue.

1. Telephone Logs

The GTL system contains the records and information about inmates' telephone calls. Inmates are required to use an individual personal identification number (IPIN) to place telephone calls against a pre-paid telephone balance so that the inmate "can be identified in the event of a security concern or a complaint from the public." Clerk's Papers (CP) at 617. An inmate's IPIN can be changed if lost, stolen, or compromised. The inmates themselves are responsible for the security of their IPINs.

The GTL system has the capability to generate a report of all telephone calls associated with an IPIN, which is referred to as a "phone log." The phone log contains the following information: the inmate's name and DOC number, IPIN, date and time of initiation of the call, duration of the call, telephone number to which the call was placed, the DOC facility from which the call was placed, and the completion code or resolution of the call. When the phone log is printed out by GTL an inmate's IPIN is replaced with their DOC number.

2.  Personal Allowed Number List

The GTL system contains the inmates' personal allowed number (PAN) lists. The initial PAN list is populated with telephone numbers of the first twenty-five successfully connected calls placed by the inmate within the first fourteen days an inmate is housed at a DOC facility. Inmates are responsible for establishing their own PAN list, but inmates are not provided printed copies of their PAN list. If an inmate wants to change his PAN list, the inmate dials #57 from the facility telephone to request the change. According to GTL, once an inmate changes his PAN list, that inmate's PAN list is updated or overwritten in the GTL system. Thus, the historical PAN information as to what telephone numbers were previously on an inmate's PAN list are not kept within the GTL system. Accordingly, the DOC through the GTL system, only has access to current PAN lists. Only limited DOC staff have access to the PAN lists.

3.  ASB Record

The GTL system also contains financial information related to an inmate's telephone account, which is referred to as account statement and balance or ASB record. The GTL system can generate a report containing the ASB record, including account telephone usage charges, deposits, and withdrawals. The report also includes a telephone account summary that includes

the account's balance, total deposits, total withdrawals, previous balance and deposits, total call charges, and ending balance.

Inmates have direct access to their ASB record and can check it at any time through the facility telephone by using their IPIN. Inmates can also check the cost of their last call through telephone prompts while on the facility telephone. Only limited DOC staff can access the ASB record to respond to an inmate's complaint about their telephone account or if there is suspicion that an inmate's IPIN may have been compromised.

B. PRIOR LITIGATION AND DOC'S CHANGE IN POLICY—PHONE LOGS

DOC's Public Records Officer Denise Vaughan issued a written guideline in June 2013 to provide direction to DOC staff regarding how to process inmate PRA requests for their phone logs. This guideline states that the phone logs are not public records unless the records were pulled from the GTL system for use in the DOC's business. This guidance was not intended to apply to other GTL records related to the telephone system.

A number of inmates had previously filed lawsuits related to their PRA requests for phone logs, including inmate Jeffrey R. McKee. McKee outlined a plan for use by other inmates to litigate PRA cases for phone logs and collect attorney fees if the DOC did not provide the requested phone logs. McKee was actively involved in litigation over inmate phone logs, and he met Padgett after Padgett transferred to the CRCC in February 2015.

In 2013 and early 2014, the DOC received multiple lawsuits filed by inmates who had spent time at the CRCC when they submitted their PRA requests for phone logs. In 2014, a Franklin County Superior Court judge ruled that an inmate's phone logs were public records. As

4

a result, the DOC changed its practice in February 2015 to direct DOC staff to begin retrieving inmate's phone logs from GTL when requested by inmates in PRA requests.

## II.  PADGETT'S PRA REQUEST

### A.  INITIAL REQUEST AND DOC'S INITIAL RESPONSE

Padgett kited[2] the DOC's Intelligence and Investigation Unit (IIU) staff to ask questions about potential overcharges related to a telephone call.  On December 15, 2015, Padgett submitted a PRA request to the DOC's public disclosure unit, which DOC received on December 21.  In his request, Padgett asked for three sets of records related to his inmate telephone records:  his phone logs, his PAN list, and his ASB record related to his IPIN for the time period November 1, 2014 through January 1, 2016.

DOC Public Records Specialist Mara Rivera was familiar with the GTL telephone system because she previously worked as a GTL site administrator.  She had processed other PRA requests for phone logs and understood that the DOC did not have PAN lists or ASB records.  When dealing with a previous PRA request, she spoke with Katie Neva, who was then an administrative assistant with the IIU, about the PAN list and ASB record.  Neva told her that the DOC did not keep those records.  Neva advised Rivera that inmates could check their telephone account balances at any time by calling a number that is provided in the inmates' handbooks, but that the account balances are managed and maintained by GTL.  Rivera also spoke with Ashley Zuber, the GTL site administrator at the time, and learned that the DOC could not provide any telephone records maintained by GTL except for the phone logs.  Zuber confirmed that an inmate's account balances

---

[2] A "kite" is a request made by an inmate.  CP at 671, 668.

could be looked up through the GTL system, but that any records would have to be requested directly from GTL.

Based on this information, Rivera acknowledged Padgett's PRA requests in a letter stating that she would provide the phone logs, but that she could not provide the PAN list and ASB record he had requested. Rivera's letter informed Padgett to contact GTL for any other records besides the phone logs. Her letter to Padgett stated as follows:

> I have interpreted your request to be for the following records related to your IPIN number, for the time frame of 11/1/2014-1/15/2016:
>
> 1. Phone Logs;
> 2. Pan List; and
> 3. Account Statement Balance form.
>
> The Public Records Act is for existing identifiable records maintained by the Department. Your time frame includes future records, and therefore, there will be no records responsive for the future portion of your request. Due to this, I will interpret your time frame to be for 11/1/2014-12/21/2015 (date request was received).
>
> The [DOC] does not have telephone account balances, or PAN lists. You can review this information at a Kiosk. Please contact [GTL] for any other records *besides* phone call logs regarding your offender telephone account. Items #2 and #3 of your request are now closed. Department staff are currently identifying and gathering records, if any, response to item #1 of your request. I will respond further as to the status of your request *within* 30 business days, *on or before* February 10. 2016.

CP at 590-91. Rivera closed the PRA request for the PAN list and the ASB record.

On February 9, 2016, Rivera informed Padgett that she had identified 43 pages of responsive records to his PRA request and made them available to Padgett to inspect or copy. She also requested payment in the amount of $8.97.

6

While waiting for Rivera's response, Padgett had submitted several more kites to IIU about telephone problems. Padgett responded to Rivera's letter and included a check for the amount requested. After receiving payment for the records, on March 21, 2015, Rivera produced the responsive phone logs to Padgett.

Padgett then went to a facility telephone kiosk to access the information. Available in the kiosk was a list of activities and services available at the prison or in the unit. Nowhere did the kiosk's menu tree permit an inmate to access their PAN list or ASB record. Padgett also did not find any menu options in the kiosk related to his telephone account.

After he received the phone logs, Padgett did not recognize several of the listed numbers. Because he was not sure if he had called those numbers, Padgett changed his IPIN as a precautionary measure.

B. SUBSEQUENT SEARCH AND RESPONSE

On November 30, 2016, after Padgett had filed a lawsuit alleging PRA violations against DOC related to his PAN list and ASB record request, Rivera was asked to reopen Padgett's PRA request and provide the additional records as requested. Vaughan, as the public records officer, exchanged emails with then Chief of Investigative Operations for the DOC, Neva, and the GTL site administrator, Clara Church, about the PAN list and ASB record.

Neva confirmed that there was no way to retrieve a historical PAN list and stated that the DOC only has access to the current PAN list within the GTL system. Rivera emailed Shawn Coleman in the DOC's business service unit to attempt to obtain the ASB record and was sent Padgett's trust account statements, but Rivera determined that those records were not responsive to the records request.

Later in December 2016, Vaughan emailed Neva asking for copies of the PAN list and ASB record. Vaughn learned through Neva that there was no way to retrieve a historical PAN list, that inmates were required to maintain their own PAN list by policy, and that "[p]rinted PAN lists will not be provided." CP at 86. Vaughn also learned that the DOC only has access to the current PAN list.

Church notified Vaughn that "[w]ithout context I can only guess at what information is being requested and try to pull some sort of report together in regards to this person's phone records. . . . The GTL billing department will need a court order before they provide any kind of accounting information on accounts held by whomever deposits funds with them, which would not be the person identified in this request." CP at 86 (alteration in original).

Vaughn later provided a 16 page record to Padgett entitled "ITS Inmate Reconciliation." CP at 86, 614. This record contained the correctional facility's code, numbers dialed (which were redacted), date/time of the inmate's debit calls, direction of calls, cost of each call, user ID, and workstation ID.

On January 5, 2017, the PAN list and the Inmate Reconciliation Form for the time period requested were made available for Padgett to copy and inspect. On February 2, 2017, these records were provided to Padgett's attorney, who stated that these additional records satisfied the PRA request.

III. PROCEDURAL FACTS

A. PRA DISCOVERY

After Padgett filed his PRA lawsuit, the parties engaged in discovery before a hearing on the merits. DOC sent interrogatories to Padgett regarding whether he had communications with inmate McKee about the inmate phone logs and ASB records.

In response to DOC's interrogatory request, Padgett answered as follows:

> **INTERROGATORY NUMBER 1**: Identify all communications, including emails, JPays, and letters between you and Jeffrey McKee regarding inmate phone logs or Travis Padgett.
> **ANSWER**: None exist.

CP at 430. No certification page was included with this discovery request, so neither Padgett nor his attorney signed the certification as required by CR 26(g).

Subsequently, Padgett provided a supplemental interrogatory answer after the final hearing on the merits. In the supplemental interrogatory answer, Padgett responded as follows:

> **INTERROGATORY NUMBER 1**: Identify all communications, including emails, JPays, and letters between you and Jeffrey McKee regarding inmate phone logs or Travis Padgett.
> **ANSWER**:
>
> Travis Padgett previously testified in his deposition that he knew Jeffrey McKee. He also stated that Mr. McKee was not forthcoming to talk about phone records. Mr. Padgett asked Mr. McKee once about how to get phone records while at Airway Heights Corrections Center. Mr. McKee answered that he didn't want to talk about it. Mr. Padgett believes but is not absolutely sure that this conversation happened after he filed this lawsuit. It is possible it happened prior to filing this lawsuit but he believes otherwise.
>
> Michael Kahrs [Padgett's attorney] had conversations with Mr. McKee about inmate phone logs or Travis Padgett on or about October 17, 2016, March 13, 2017, and March 17, 2017. He believes he had at least one more conversation with Mr. McKee sometime between October 17, 2016 and March 13, 2017[,] but does not have a particular date.

9

> Jpay emails between Michael Kahrs and Jeffrey McKee:
>
> March 12, 2017
>
> March 16, 2017
>
> Letter between Michael Kahrs and Jeffrey McKee:
>
> March 17, 2017.

CP at 870. Both Padgett and his attorney signed the required CR 26(g) certification attached to the supplemental interrogatory response.

## B. TRIAL COURT'S PARTIAL SUMMARY JUDGMENT ORDER ON PRA VIOLATION

On March 17, 2017, Padgett filed a motion for partial summary judgment, arguing that DOC violated the PRA by failing to conduct a reasonable search for the PAN list and ASB record and by silently withholding these records. After conducting a hearing on the merits under RCW 42.56.550, the trial court entered the following findings of fact:

> 1. Padgett made a request for three records pursuant to the Public Records Act on December 15, 2015. He asked for phone logs, his Personal Allowed Number ("PAN") list, and his phone account statement and balance [ASB record] related to his Inmate Personal Identification Number ("IPIN") from November 1, 2014through January 15, 2016.
>
> 2. [DOC] received the request on December 21, 2015. [DOC] timely responded and stated it would provide the phone logs but that it did not have telephone account balances or PAN lists and directed Padgett that he could review this information at a kiosk or contact[GTL], the telephone provider to the [DOC], for this information. The phone logs were provided on March 21, 2016.
>
> 3. After this lawsuit was filed and served, [DOC] provided Padgett a copy of the records that he indicates he was requesting. Specifically, Padgett was provided a PAN List snapshot dated December 13, 2016, and an ITS Inmate Reconciliation form on February 2, 2017.
>
> 4. Padgett accepted these as responsive to his request for his phone account statement and balance information.

CP at 531-32.

The trial court also entered the following conclusions of law:

1. Pursuant to RCW 42.56.550(3), this [c]ourt may conduct a hearing based solely on affidavits. Both parties having submitted affidavits, this [c]ourt may make findings of fact and a ruling on the merits of the liability issues presented.

2. An inmate's PAN list is a public record.

3. The account statement balance form is less clear because there was some confusion as to what was meant by this request. However, some documents showing an inmate's phone account statement and balance are public records. This does not necessarily mean that all records that any parties may believe constitute account statement and balance forms are public records.

4. [DOC] is liable for conducting an unreasonable search for the PAN list. The same is not true for the account statement and balance form.

5. [DOC] violated the PRA by not providing the fullest assistance to Padgett in violation of RCW 42.56.100. Specifically, [DOC] did not provide the fullest assistance when responding to [Padgett's] request by failing to seek clarification or asking for additional information from Padgett and simply closely [sic] the request despite the confusion as to what records could be provided to Padgett.

6. The issue of penalties, attorney's fees, and costs are to be addressed at the hearing on May 26, 2017.

CP at 532-33.

C. PADGETT'S MOTION FOR PRA PENALTIES—TRIAL COURT'S ORDER DENYING PENALTIES

Padgett then filed a show cause motion requesting PRA penalties. The trial court denied Padgett's motion for penalties, ordered that he was entitled to reasonable attorney fees and costs, and entered the following findings of fact:

1. [DOC] received a public records request from Travis Padgett on December 21, 2015. In this request, Padgett sought phone logs, his Personal Allowed Number ("PAN") list, and his phone account statement and balance related to his Inmate Personal Identification Number ("IPIN") from November 1, 2014[] through January 15, 2016.

2. [DOC] timely acknowledged [Padgett's] request. [DOC] informed [Padgett] that it would provide his phone logs. However, [DOC] indicated that it would not provide [Padgett] with the PAN list or account statement and balance information as [it] did not have account balances or PAN lists.

3. Upon the filing of this lawsuit, [DOC] provided Plaintiff with a PAN list and an ITS Inmate Reconciliation form.

4. The [c]ourt previously found that [DOC] violated the [PRA] in its response to [Padgett's] request.

5. Based on the record and [DOC]'s conduct as a whole, [DOC] did not act in bad faith in initially denying [Padgett] the PAN list or [ASB] records.

6. The prior court decisions involving phone logs are relevant to the records in this case, and the [c]ourt has reviewed the decisions available to [DOC]. However, the prior litigation over phone logs did not necessarily require [DOC] to reformulate a different position with regards to the phone records that the [c]ourt found presented a violation in this case, specifically, the PAN list and [ASB] records.

7. In light of the various litigation over phone logs, the [DOC] was faced with a dynamic situation involving these types of phone records under the PRA. Based on the dynamic nature of the situation and [DOC's] response in this case, [Padgett] has not shown that [DOC] acted in bad faith.

CP at 535-36.

The trial court also entered the following conclusions of law:

1. As an incarcerated individual, [Padgett] must show that [DOC] acted in bad faith to be entitled to penalties under RCW 42.56.565(1);

2. Viewing [DOC]'s conduct as a whole, [Padgett] has failed to show that [DOC] acted in bad faith in denying [him] the records that he requested and therefore denies [his] request for penalties as a result;

3. Based on the [c]ourt's finding that [DOC] violated the PRA, [Padgett] is entitled to reasonable attorney's fees and costs. The scheduling order required the parties to address this issue at the hearing on May 26, 2017. However, [Padgett] failed to provide documentation to allow the [c]ourt to rule on this issue. Based on this failure, the record is inadequate to decide the issue. The [c]ourt fully expected that issue to be briefed today and the [c]ourt does not understand why the issue was not briefed. The [c]ourt will not apply waiver to the situation and is not going to preclude a motion for costs and fees to be brought in the future. During that hearing on a motion for attorney's fees, the [c]ourt will address any adjustments that should be made based on arguments that [DOC] made at this hearing or future arguments.

CP at 536-37. The trial court subsequently awarded Padgett reasonable attorney fees and costs.

12

D. DOC's MOTION FOR DISCOVERY SANCTIONS—TRIAL COURT'S ORDER DENYING SANCTIONS

DOC filed a motion for sanctions alleging that Padgett violated the CR 26(g) certification requirements. DOC argued that there was a common plan by the inmates housed at CRCC to make money off PRA requests for telephone records, and part of that relied upon a connection between Padgett and inmate McKee, who was also housed at CRCC during the relevant time at issue in Padgett's PRA request. That connection was not fully apparent until after the trial court's final hearing on the merits when Padgett provided DOC with the supplemental interrogatory response. DOC argued that this tactic interfered with its ability to properly defend the lawsuit, and violated CR 26(g) because Padgett knew his original interrogatory answer was inaccurate and repeatedly refused to correct it.

Padgett argued that DOC failed to provide the verification page with the initial interrogatory and failed to bring the issue to his counsel's attention, and thus, no sanctions were warranted. He also argued that the violation was not intentional and DOC had the opportunity to ask both him and McKee about McKee's involvement in this litigation. The trial court ruled that it was "troubled" by what happened and suspected that there was more to the story, and denied DOC's motion for discovery sanctions. CP at 557.

E. APPEAL

Padgett appeals the trial court's findings of fact and conclusions of law dated May 26, 2017, the order denying his penalties dated July 14, 2017, and the order on his motion for attorney fees and costs, dated October 6, 2017. The DOC cross appeals.

F.   MOTION TO SUPPLEMENT ON REMAND, COMMISSIONER'S RULING, ORDER SUPPLEMENTING RECORD

After Padgett filed his appeal, DOC filed a motion with this court to supplement the record or remand under RAP 7.2 to the trial court.  DOC sought to supplement the appellate record with Padgett's supplemental interrogatory answer wherein he admitted his connection with McKee, which he had denied in his original interrogatory answer.

On October 27, 2017, we entered a notation ruling holding that supplementation of the record was appropriate under RAP 9.11(a) and we directed the trial court to take additional evidence to supplement the record and enter appropriate findings of fact.  On January 12, 2018, the trial court on remand granted the motion to supplement the record with Padgett's supplemental interrogatory answer and entered the following relevant findings of fact:

> 1.  On October 27, 2017, the Court of Appeals entered a notation ruling in 581081-2-II, holding that supplementing the record on appeal was appropriate under RAP 9.11(a).  Consistent with this ruling, the Court of Appeals directed this [c]ourt to take evidence to supplement the record on appeal and make any appropriate factual findings under RAP 9.11(b);
>
> 2.  As part of this case, the parties disputed the reason that Padgett submitted his public records request.  Padgett alleged that he submitted the request to discover information about his phone charges while [DOC] alleged that Padgett was motivated by a common plan among inmates to make money off of requests for phone records;
>
> 3.  In support of [DOC's] position, it submitted Padgett's responses to discovery that sought certain communications between Jeffrey McKee and Padgett and Jeffrey McKee and Padgett's attorney.  [DOC] has argued that McKee is part of the larger plan to submit requests for phone records.  The initial discovery responses submitted by [DOC] and available to the court at that time were considered by the Court in ruling on [Padgett]'s Show Cause Motion on Penalties;
>
> 4.  After this [c]ourt ruled on Plaintiff's Show Cause Motion on Penalties and Padgett appealed this case, Padgett twice supplemented the discovery responses that [DOC] had submitted in its response.  The information that was provided in these supplements should have been provided with Padgett's previous

14

discovery responses but were not. The information also confirmed that the prior response, upon which [DOC] relied, was inconsistent;

5. Because the responses were provided after the [c]ourt ruled on [Padgett's] Show Cause Motion on Penalties, the [c]ourt did not consider the supplemental responses and the supplemental responses are not currently in the record on appeal. If the [c]ourt had access to these two supplemental responses and they would have been brought to the attention of the court, the [c]ourt would have considered them.

CP at 888-89.

## ANALYSIS

### I. STANDARDS OF REVIEW

Whether DOC acted in bad faith is a question of law that we review de novo. *Faulkner v. Dep't of Corr*., 183 Wn. App. 93, 101-02, 332 P.3d 1136 (2014) (citing *Francis v. Dep't of Corr., 178* Wn. App. 42, 51-52, 313 P.3d 457 (2013)). When, as here, the person claiming PRA violations is an inmate when the action is filed, no penalties will be awarded "unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1).

Generally, we review challenges to an agency action under the PRA de novo. RCW 42.56.550(3); *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 428, 327 P.3d 600 (2013). Whether DOC violated the PRA was decided on summary judgment. Therefore, we examine whether disputed issues of material fact exist and whether the agency was entitled to judgment as a matter of law. *Bldg. Indust. Ass'n of Wash. v. McCarthy,* 152 Wn. App. 720, 733, 218 P.3d 196 (2009). "'[W]here the record consists only of affidavits, memoranda of law, and other documentary evidence', we stand in the same position as the trial court" in reviewing agency action challenged under the PRA. *John Doe G v. Dep't of Corr.,* 190 Wn.2d 185, 191, 410 P.3d

1156 (2018) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994)).

A trial court's decision on discovery sanctions is reviewed for an abuse of discretion. *Wash. State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). "A trial court abuses its discretion when its [decision] is manifestly unreasonable or based on untenable grounds." *Fisons Corp.,* 122 Wn.2d at 339.

## II. DIRECT APPEAL

### A. BAD FAITH

Padgett argues that the trial court erred when it failed to find that DOC acted in bad faith by initially refusing to conduct an adequate search for the ASB record. We disagree.

### 1. Legal Principles

As an inmate at the time he made his public record request, Padgett was subject to a limitation on penalties adopted by the legislature in 2011. LAWS OF 2011, ch. 300, § 1; RCW 42.56.565. Under RCW 42.56.565(1),

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

Under the PRA, "bad faith incorporates a higher level of culpability than simple or casual negligence." *Faulkner*, 183 Wn. App. at 103. To establish bad faith, "an inmate must demonstrate a wanton or willful act or omission by the agency." *Faulkner*, 183 Wn. App. at 103. "Wanton" means "'[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.'" *Faulkner*, 183 Wn. App. at 103 (quoting BLACK'S LAW DICTIONARY 1719-720

(9th ed. 2009)). "'One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid [the risk of harm] and is indifferent to whether harm results or not.'" *Faulkner*, 183 Wn. App. at 104 (internal quotation marks omitted) (quoting BLACK'S LAW DICTIONARY 1720).

"[T]he failure to conduct a reasonable search or the failure to follow policies in a search does not necessarily constitute bad faith." *Faulkner*, 183 Wn. App. at 102 (citing *Francis*, 178 Wn. App. at 63 n.5). The bad faith standard does not warrant penalties to an offender "simply for making a mistake in a record search or for following a legal position that was subsequently reversed." *Francis,* 178 Wn. App. at 63. But an agency is subject to penalties "'if it fails to carry out a record search consistently with its proper policies and within the broad canopy of reasonableness.'" *Faulkner*, 183 Wn. App. at 102 (quoting *Francis*, 178 Wn. App. at 63). Reasonableness is determined by examining all the circumstances of the case. *Francis*, 178 Wn. App. at 63 n.5.

2. No Bad Faith

Padgett argues that because prior court rulings held that inmate phone logs are public records, DOC's legal position here regarding the ASB record is indefensible and DOC failed to conduct any "serious independent analysis" of its own prior to responding to his request, citing *Adams v. Dep't of Corr.*[3] Appellant's Opening Br. at 22.

In *Adams*, we affirmed the trial court's order that DOC violated the PRA by failing to disclose FBI fingerprint-based rap sheets, ruling that DOC's reliance on the Washington State

---

[3] 189 Wn. App. 925, 929, 361 P.3d 749 (2015).

Patrol as the reason for withholding the records was not legally defensible and DOC did not conduct any independent analysis or critical review. *Adams*, 189 Wn. App. at 929.

*Adams* is distinguishable. *Adams* dealt with a very different type of record, rap sheets, not inmate ASB records maintained by a third party vendor. *Adams,* 189 Wn. App. at 931. Further, in *Adams*, DOC failed to conduct any serious independent review related to the requested records. *Adams*, 189 Wn. App. at 943.

Here, Rivera's initial response was based on her reasonable, but mistaken, belief that the DOC did not have the PAN list or ASB record. That belief was based on her personal knowledge, prior responses to PRA requests she had worked on, her prior work at GTL as a site administrator, and her inquiries to the IIU confirming that the ASB record is to be requested from GTL directly. At the time Rivera initially responded to Padgett's PRA request, she reasonably believed that the DOC had no control over the ASB record.

Rivera's declaration details her efforts in contacting DOC's IIU related to Padgett's record request. Neva told Rivera that inmates could check their account balances at any time by calling a number that is provided in the inmates' handbook at a kiosk, and that the account balances are managed by GTL. Rivera also consulted with Zuber, the GTL site administrator at the time, and learned that the DOC could not provide any telephone records besides the actual phone logs. Zuber also confirmed that inmate balances could be looked up through the GTL system, but that any records would have to be requested from GTL.

Based on the information she obtained, Rivera informed Padgett that he could obtain his ASB record from GTL or through a facility kiosk. Rivera's initial response was based on her reasonable but mistaken belief. That mistake does not rise to the level of willful or wanton conduct

warranting penalties. *See Faulkner*, 183 Wn. App. at 103. Thus, we hold that DOC did not act in bad faith.

B. REASONABLENESS OF THE SEARCH—ASB RECORD

Padgett argues that the trial court erred by not finding that DOC failed to conduct a reasonable search for the ASB record. DOC argues that because the trial court had already determined that it did not provide the fullest assistance related to the ASB record, whether there might be additional grounds for finding a second violation is moot. We agree with DOC.

We generally do not consider issues or appeals that present only moot or abstract questions "or where the issues the parties raised in the trial court no longer exist." *In re Det. of M.K.*, 168 Wn. App. 621, 625, 279 P.3d 897 (2012). "An appeal is moot where it presents merely academic questions and where this court can no longer provide effective relief." *In re M.K.*, 168 Wn. App. at 625.

Here, the trial court already found a PRA violation based on DOC's initial search for Padgett's ASB record. As discussed above, because we hold that the trial court properly determined that DOC did not act in bad faith, there is no further relief that can be provided to Padgett as he is not entitled to PRA penalties. RCW 42.56.565(1). Therefore, without any issue of penalties, whether the trial court erred by not finding another basis upon which to conclude that DOC violated the PRA is moot. Because the issue is moot, we do not address this issue further.

III. CROSS APPEAL

DOC argues that the trial court erred by denying its motion for sanctions based on Padgett's violation of the CR 26(g) certification requirement. Because the trial court did not have Padgett's supplemental interrogatory answer in the record when it ruled on DOC's motion for discovery

sanctions and the record shows that the trial court would have considered it, we remand to the trial court to make a CR 26 violation determination based on its January 12, 2018 order.

Under CR 26(g), a represented party's attorney must sign discovery responses and certify that he or she has "read the request, response, or objection, and that to the best of their knowledge, information, and belief formed after a reasonable inquiry" the document is:

> (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>
> (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
>
> (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Furthermore, when a represented party's attorney signs a request in violation of CR 26, "the court . . . shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction." CR 26(g). This sanction award may "include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee." CR 26(g). When a party violates CR 26(g), a sanction is mandatory. *Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc.,* 168 Wn. App. 710, 715, 282 P.3d 1107 (2012).

Here, DOC argues that Padgett violated CR 26(g) because Padgett certified a discovery response that indicated there had been no communication between McKee and Padgett and their counsel. DOC alleges that this answer proved inaccurate and Padgett's counsel refused to correct the error until after Padgett filed his notice of appeal. Padgett argues that the violation was not intentional and DOC knew that McKee had signed a declaration filed in this case which indicated that communication had occurred between McKee and Padgett's counsel.

20

After hearing argument related to the discovery violation, the trial court entered the following relevant finding regarding the discovery sanctions:

> 12. The [c]ourt does not find that any sanctions against [Padgett] are appropriate. Although the [c]ourt is troubled by what happened with the discovery responses and suspects there is a lot more to it that it does not know, the [c]ourt will not issue sanctions against [Padgett].

CP at 557.

Following a hearing on DOC's motion to supplement the record on appeal related to the discovery responses, the trial court found as follows:

> 4. After this [c]ourt ruled on [Padgett's] Show Cause Motion on Penalties and Padgett appealed this case, Padgett twice supplemented the discovery responses that [DOC] had submitted in its response. The information that was provided in these supplements should have been provided with Padgett's previous discovery responses but were not. The information also confirmed that the prior response, upon which [DOC] relied, was inconsistent;
>
> 5. Because the responses were provided after the [c]ourt ruled on [Padgett's] Show Cause Motion on Penalties, the [c]ourt did not consider the supplemental responses and the supplemental responses are not currently in the record on appeal. If the [c]ourt had access to these two supplemental responses and they would have been brought to the attention of the court, the [c]ourt would have considered them[.]

CP at 889. On January 12, 2018, the trial court entered an order on the supplemental discovery responses.

Based on the record before the trial court, the court ruled that Padgett had not violated CR 26(g), but found that the nature of the ASB record request was confusing. The trial court was troubled by what happened with the discovery responses. However, at the time the trial court ruled on DOC's motion for discovery sanctions, the court did not have Padgett's supplemental interrogatory answer, and the trial court has stated that it would have considered it if the document had been provided. Thus, because the trial court did not have Padgett's supplemental interrogatory

21

answer at the time it made its ruling and would have considered the supplemental interrogatory answer in making its determination on the discovery sanctions, we remand this issue to the trial court to make a CR 26 violation determination based on its January 12, 2018 order.

APPELLATE ATTORNEY FEES

Padgett requests an award of reasonable appellate attorney fees and costs if we determine that DOC acted in bad faith when it responded to his requests. Because Padgett has not prevailed on any issue, he is not entitled to an award of appellate attorney fees and costs.

The PRA provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record . . . shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongly withheld records or portions thereof. *Gronquist v. Dep't of Licensing*, 175 Wn. App. 729, 756, 309 P.3d 538 (2013).

We hold that all of Padgett's claims fail; therefore, he did not prevail on appeal. Because Padgett did not prevail on any of his claims, we hold that he is not entitled to an award of appellate attorney fees and costs under RCW 42.56.550(4).

No. 51081-2-II

CONCLUSION

We hold that DOC did not act in bad faith. Because the trial court concluded that DOC had violated the PRA by failing to provide Padgett with the fullest assistance on his ASB record request, we need not address whether DOC also violated the PRA by failing to conduct a reasonable search for the ASB record as that issue is moot. We further hold that the trial court did not have a complete record at the time it made its determination of the claimed CR 26(g) violation. Thus, we affirm the trial court's summary judgment order that DOC had violated the PRA and its order denying PRA penalties. We also hold that the trial court did not have a complete record at the time it made its CR 26(g) determination and decision and remand to the trial court to make a CR 26 violation determination based on its January 12, 2018 order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

TRICKEY, J.P.T.

23