# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARLOS BENITEZ, JR., | No. 79444-2-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| SKAGIT COUNTY, | |
| Respondent. | |

DWYER, J. — Carlos Benitez submitted a public records request to Skagit County seeking all "communications" to or from the deputy prosecuting attorney in his criminal case. Believing he had not been given all the records responsive to his request, Benitez filed suit against the County alleging violations of the Public Records Act (PRA), chapter 42.56 RCW. The trial court granted the County's summary judgment motion, dismissing the complaint. Because Benitez raises a genuine issue of material fact as to whether the County conducted an adequate search for responsive records, the trial court erred by concluding as a matter of law that the County did not violate the PRA. We remand to the trial court for further proceedings consistent with this opinion.

I

Following a multiagency surveillance operation, the Skagit County Prosecutor's Office charged Benitez and several codefendants with multiple

Citations and pin cites are based on the Westlaw online version of the cited material.

counts of drugs, firearms, and theft offenses. Benitez was convicted in 2010 and is serving a lengthy prison sentence.

On April 3, 2016, Benitez sent a letter to the Skagit County records management office requesting copies of the following records:

> *Any and all communications, e-mails, or other documents*, generated/created during October 25, 2009 – July 3, 2010, sent to, received from or exchanged between Skagit County Deputy Prosecutor Trisha D. Johnson and any third party, including attorney Jennifer A. Bouwens, any Skagit County Interlocal Drug Enforcement Unit officers, any Northwest Regional Drug Task Force officers, any employee of the Whatcom County Prosecutor's Office, any Skagit County Sheriff officers, any Burlington Police officers, any Washington State Patrol officers, and any ATF Seattle Group 1 officers, that mention, reference, or relate to Carlos Benitez, Jr., Abel Cantu, Jr., Jesus Hernandez, and Jeremiah Winchester.

(Emphasis added.)

Cori Russell, who has been the County's public records officer since 2007, assigned Benitez's request a tracking number. She informed him that she anticipated having the records available on or around May 6, 2016.

Russell knew, from fulfilling other requests for records from the prosecutor's office, that "if there were any responsive records, they would be found in a prosecution case file or in an email account." Russell contacted Vickie Maurer, the office administrator for the prosecutor's office. From Maurer, she learned that Johnson—the deputy prosecutor responsible for prosecuting Benitez, Cantu, and Hernandez—stored all records related to a particular prosecution in the case file for that defendant, did not keep separate or personal files, did not use voice mail or text messages, and seldom sent letters or facsimiles. Because "nearly everything in the case file would have been sent to

2

or from [Johnson]," Russell interpreted Benitez's request for "[a]ny and all communications, e-mails, or other documents" exchanged between Johnson and third parties as "a broad request for essentially everything in those files." Russell stated:

> Everything in that file would have been responsive to Mr. Benitez' April 3, 2016, request because everything in Mr. Benitez' case file would "relate" to him and all of it had either been sent to or from DPA Johnson to someone else.

Russell also planned to search Johnson's e-mail folders "to identify potentially responsive emails."

Russell obtained the prosecution case files for Benitez and Cantu. Hernandez's case file had already been destroyed in accordance with the designated retention schedule.[1] Russell first began working through Benitez's case file. She scanned the entire file into the County's imaging system, page by page, "to review each document to note whether any exemptions applied."

On May 6, 2016, Russell notified Benitez that she had a first installment of 246 pages of records for him. At this point, Russell had not yet begun to search the other case files or Johnson's e-mail folders. Nonetheless, some e-mails were included in the first installment because they had been printed and placed in the case file. Russell told Benitez she anticipated having a second installment of records on or about June 3, 2016.

On May 25, 2016, Benitez sent a letter to Russell complaining that he already had most of the records she provided as part of the discovery in his

---

[1] Winchester was a witness who testified against Benitez at trial. As such, there was no case file for him; any information regarding Winchester would have been in the case files for the three defendants.

criminal case. Benitez informed Russell that "the records you provided are not the records I was seeking to obtain, i.e., records relating to communications between the parties referenced in my request." He amended his request as follows:

> *All communications by e-mail, letter, Fax, or other media*, generated/created or that occurred during October 25, 2009 through July 3, 2010, between Skagit County Prosecutor Trisha D. Johnson and any third party, including attorney Jennifer A. Bouwens, any Skagit County Interlocal Drug Enforcement Unit officers, any Northwest Regional Drug Task Force officers, any employee of the Whatcom County Prosecutor's Office, any Skagit County Sheriff officers, any Burlington Police Department officers, any Washington State Patrol officers, and any ATF Seattle Group 1 officers, that mention, reference, or relate to Carlos Benitez, Jr., Abel Cantu, Jr., Jesus Hernandez, Jeremiah Winchester, and Jessica Gonzalez.[2]

(Emphasis added.) Benitez stated: "My request should now be clear that I am only seeking records pertaining to all communications between any and all parties referenced in my request."

Russell viewed Benitez's amended request for "all communications" as "still broad enough to cover almost all of the records in the case file." On June 2, 2016, Russell contacted Benitez asking him to further clarify his amended request. She wrote:

> I read your request as asking for all communications, regardless of the media, between October 25, 2009 and July 3, 2010. You mention Trisha Johnson in your request therefore I have asked for her file. In reviewing her file, I've begun to pull any and all communications in the file between the date ranges you have requested. . . . The only significant difference I see in your amended request is you've added the name of Jessica Gonzales. In order to better provide you with the records you are seeking, I am asking for additional clarification.

---

[2] Gonzalez was another witness who testified against Benitez at trial.

Russell told Benitez that, because he had asked for "all communications," she did not plan to sort out and remove any duplicate information. According to Russell, "[i]f two or more copies of a responsive record are in a file, they are each responsive and the better practice is to disclose each."

> For example, one copy of the record may have been used in one context while the second copy was used in another. The fact that two copies of a particular record have been filed indicates that the record was used in differing contexts or that one was a draft. Also, as is common for records of emails, the emails will be attached in a string. The original email may be forwarded or responded to multiple times. Each email string is a separate record even though each additional record is largely duplicative of an earlier email in the string.

> Treating duplicates that are in a file or several files as independently responsive records is a best practice used by public records act officers throughout the state.

> On June 12, 2016, Benitez responded to Russell, amending his request a

second time. He told her that he was seeking

> *[a]ny records of Skagit County Prosecuting Attorney Trisha D. Johnson's communications, whether by e-mail, fax, text message, or other media*, generated or that occurred from October 25, 2009 through and up to July 3, 2010, with any third party, including attorney Jennifer A. Bouwens, any Skagit County Interlocal Drug Enforcement Unit officers, any Northwest Regional Drug Task Force officers, any employee of the Whatcom County Prosecutor's Office, any Skagit County Sheriff officers, any Burlington Police Department officers, any Washington State Patrol officers, and any ATF Seattle Group 1 officers, that mention, reference, or relate to Carlos Benitez, Jr., Abel Cantu, Jr., Jesus Hernandez, Jeremiah Winchester, and Jessica Gonzalez.

(Emphasis added.) Benitez asked Russell to provide an index of the records she located. He also instructed her to not provide duplicate copies of documents he had already received.

5

Because Benitez was still asking for "[a]ny records," Russell did not believe that he had materially changed his request. She "interpreted it to mean what it appeared to say: send me copies of everything in the file." Russell asked Benitez to confirm that he was seeking

> *records dated October 25, 2009 through July 3, 2010 associated with Trisha Johnson*, Jennifer Bouwens, Skagit County Inter local Drug Enforcement Unit Officer, Northwest Regional Drug Task Force Officers, any employee of the Whatcom County Prosecutor's office, any Skagit County Sheriff officers, any Burlington Police Department officers, Washington State Patrol, ATF Seattle Group 1 officers that mention, reference or relate to Carolos Benitez, Jr., Abel Cantu, Jr., Jesus Hernandez, Jeremiah Winchester, and Jessica Gonzales.

Russell noted that Benitez had asked for "an index of the responsive documents" but informed him that "[t]here is not an index for Ms. Johnson's working file."

On June 29, 2016, Benitez responded, asserting that Russell did not appear to understand what he wanted. He told her he was not requesting "an index of Ms. Johnson's working file" but rather "an index of any responsive records" that Russell had ready for inspection and copying.

On July 14, 2016, Russell again attempted to clarify what Benitez wanted:

> I have received your letter asking if I understand your request. Maybe it will be helpful if I explain the process of gathering the requested records. It's my understanding that you want *records dated October 25, 2009 through July 3, 2010 associated with Trisha Johnson*, Jennifer Bouwens, Skagit County Inter local Drug Enforcement Unit Officer[s], Northwest Regional Drug Task Force Officers, any employee of the Whatcom County Prosecutor's office, any Skagit County Sheriff officers, any Burlington Police Department officers, Washington State Patrol, ATF Seattle Group 1 officers that mention, reference or relate to Carlos Benitez, Jr., Abel Cantu, Jr., Jesus Hernandez, Jeremiah Winchester, and Jessica Gonzales.

> I have taken Trisha Johnson's working file, and pulled out the date range you specified. Within her file, I have pulled out any "Attorney Work Product". I do not look for duplicated information, only that the documents is within the specific date range. The file has a variety of documents in it and we do not index these files.
>
> In regards to the installment, there are approximately 200 pages. . . . The majority of documents are copies of the court case that can be viewed in the Superior Court Clerk's office.

(Emphasis added.)

On July 24, 2016, Benitez responded, clarifying that he was seeking records of Johnson's "communications," not records "associated" with Johnson. He argued that Russell did not appear to be searching Johnson's e-mail accounts, phone records, or fax records. Benitez threatened to sue the County for violations of the PRA if he was required to pay for records that were not responsive to his request.

Russell consulted with counsel for the County, who advised her that the totality of Benitez's letters suggested that "he was looking for correspondence and not police reports, briefs, motions, subpoenas, etc." Russell thus began to focus on searching for correspondence rather than all documents sent to or from Johnson, "based on the more narrow intent expressed in his several letters rather than on the broad language he used to frame his requests for records."

Because there were "no letters, text messages, or facsimiles in the case files," Russell concluded that she "only needed to search for emails". She believed she could do that by searching through Johnson's e-mail program "because any paper copies in the files would be duplicates, which Mr. Benitez expressly said he did not want."

7

Russell searched Johnson's e-mails for responsive records by entering the names of the people Benitez named in his request into a search window in the e-mail program. On September 13, 2016, Russell wrote to Benitez that she had obtained a first installment of 186 pages of e-mails responsive to his request. Before mailing the records, Russell determined that nine of the pages were blank and removed them. On November 8, 2016, Russell sent Benitez 175 pages of documents comprising of "copies of emails and correspondence from Trisha Johnson's files." She concluded: "Please let me know if this is the information you were requesting. If this is the type of information you are looking for, I may have another 30 or so pages that I could review and send you within the next couple of weeks."

On December 6, 2016, Benitez wrote to Russell acknowledging receipt of the records. He stated:

> The emails you provided are one type of communications records I have been seeking to obtain. I would like to remind you, however, that my request is not only for Ms. Johnson's communications by email but is for any of her communications, regardless of the type of media – i.e.; fax, text messages, etc. So I'm assuming that you are continuing to search for other records of Ms. Johnson's communications by other media.

He again complained that the batch of documents contained "a lot of duplicate emails/information." He also asserted that some of the e-mails referenced attachments that were not included.

> After carefully reviewing the emails you provided, I also found that there are some emails with attachments missing and there are some emails referencing other emails related to them which have not been disclosed or produced. You reviewed these documents, so maybe you overlooked these attachments and emails, or maybe they were silently withheld. If you need help in identifying which

emails indicate there [are] attachments missing or other emails related to them, I can tell you on which pages of the documents they are located. Unless these attachments and other emails are exempt, you must produce these records.

As a reminder, silently withholding non-exempt public records is a violation of the Public Records Act. I trust that you will review the documents and produce any missing records. I do not wish to take legal action to compel production of these missing records, but I will do so if necessary to obtain them, and for violations of the PRA.

On December 21, 2016, Russell sent Benitez a letter explaining that she did not remove duplicate records to ensure that all records responsive to his request were provided. She asked Benitez to identify the attachments he did not receive.

Benitez did not respond. On January 18, 2017, Russell sent Benitez additional pages of "emails and correspondence from Trisha Johnson's files." She informed him that she would complete his request by February 10, 2017.

On April 16, 2017, Benitez notified Russell that one of the e-mails he received—a May 19, 2010 e-mail to Johnson from assistant United States attorney Jill Otake—referred to a prior e-mail that had not been provided.

As I reviewed the records I found an email from Jill Otake to Ms. Johnson, dated May 19, 2010, in which Ms. Otake references an email "just sent" to Ms. Johnson. More specifically, Ms. Otake states: "If there is anything you want changed in the email I just sent, let me know." The email Ms. Otake references is nowhere in the records you provided. Based on the substance of Ms. Otake and Ms. Johnson's communications, I found that the email pertains to Cantu and myself, possibly something about federal charges. Thus, the email clearly falls within my request, and you should have provided me with it.

9

On May 22, 2017, Russell responded, enclosing "the remainder of emails from Ms. Johnson's file," including the missing Otake e-mail. The e-mail from Otake, entitled "Cantu," states:

> I write this email in advance of a more formal letter to follow to confirm the following regarding Abel Cantu.
>
> The United States Attorney's Office for the Western District of Washington agrees not to prosecute Mr. Cantu for crimes outlined in Task Force case number 09-TF048, on the condition that: (1) Mr. Cantu plead guilty as outlined in the attached chart and (2) Mr. Cantu articulates in his plea statement co-defendant Carlos Benitez's involvement in the crimes with which Mr. Cantu is charged.[3]

On June 4, 2017, Benitez contacted Russell seeking the "more formal letter" referenced in the Otake e-mail. Benitez sent a second letter on July 9, 2017 asking about the whereabouts of the letter. According to Russell, she did not receive either the June 4 or the July 9 letter.

On April 10, 2018, Benitez sued the County, alleging violations of the PRA. Benitez argued that the County improperly withheld non-exempt public records, and that it acted in bad faith by repeatedly seeking clarification of his requests, by failing to provide a written statement of the exemptions authorizing the withholding, by conducting an inadequate search for records, by failing to respond to his requests in a timely manner, and by failing to provide a list of the records identified as responsive to his request. Benitez sought an order directing the County to show cause why it failed to produce the records, for an in camera review of all withheld records, and for a determination that the County acted in bad faith. He requested statutory penalties, attorney fees, and costs.

---

[3] Benitez received the "attached chart" referred to in the e-mail.

After the County was served with the complaint, Russell observed an interview between the County's counsel and Johnson. Johnson stated that she "could not say with absolute certainty that she had not accidentally deleted an email that could have related to her prosecution of Benitez, Cantu, or Hernandez." Russell thus concluded that she may not have disclosed all of the responsive correspondence because some of the e-mails in the case files may have been deleted from Johnson's e-mail folders.

Russell directed two of her employees, Stevee Kivi and Kevin Luna, to pull all correspondence from the Benitez and Cantu case files, and to search for any attachments referenced in e-mails. Kivi and Luna located multiple e-mails that had been printed out and placed in the case files. However, they were unable to find a copy of the "more formal letter" that Otake referred to in her e-mail.

On June 4, 2018, Russell mailed Benitez copies of all correspondence found in the case files that had been sent from or received by Johnson. She explained:

> As advised in my letter dated November 8, 2016, I had taken a different approach in preparing records for release relevant to your request at that time. The different approach was made in an effort to avoid providing and charging you for duplicate records. It involved switching my search from communications, meaning any document that was transmitted, to correspondence. Because, except in rare instances, Ms. Johnson used emails for all of her correspondence and did not use facsimile, text messages, or letters, all of her correspondence to and from others would have been in her email folders. Anything in the file would have been a duplicate, which you complained about receiving.
>
> However, following DPA Denny's review of the allegations in your recently filed complaint and his discussions with potential witnesses, he has advised that I mail you a courtesy copy of all of the emails that were filed in your and Cantu's case files. (Because

11

the Hernandez case file was destroyed before April 2, 2016, it is no longer available and was not included in the possible locations where responsive records could be found.) This supplemental disclosure is provided out of an abundance of caution that an email that is in the case file may have been deleted.

Because the case file likely contained many duplicates of e-mails that Benitez had already received, Russell did not charge him for the copies.

Eleven documents Russell sent to Benitez in this final installment had not been previously provided to him. This included: (1) an e-mail from Johnson dated June 2, 2010 listing the date of Cantu's plea hearing, (2) an e-mail from Johnson dated July 3, 2010 announcing the verdict in Benitez's trial to other members of the prosecutor's office, (3) subpoenas e-mailed from Johnson's legal assistant (on which Johnson was copied), (4) an e-mail string between Johnson, Benitez's trial counsel and a police officer regarding notes from a controlled buy conducted as part of the law enforcement investigation, (5) an e-mail between Johnson and Benitez's trial counsel about Benitez's offender score, (6) e-mails from Johnson's legal assistant (on which Johnson was copied) to Benitez's trial counsel notifying her to pick up discovery, (7) e-mails from Johnson's legal assistant (on which Johnson was copied) requesting certified copies of court records, and (8) an e-mail to Johnson from a Department of Corrections employee notifying her that an unidentified document was being mailed to the prosecutor's office.

On June 7, 2018, the County moved for summary judgment. In support of the motion, the County provided declarations from Russell, Johnson, Maurer, Kivi, and Luna.

12

In her declaration, Johnson described her personal practice for storing and maintaining e-mails. She explained that she routinely deletes transitory e-mails in order to free up storage space. She saves all important e-mails in an archive folder. But she stated that it was possible she had deleted an e-mail before moving it to an archive folder.

> Keeping my email folders uncluttered is important because of the limit on the number of emails that can be held in non-archive folders. If the limit on the number of emails is reached, then I would not receive new emails unless I deleted or archived some of the emails. Therefore, I do not save all of my email correspondence. For example, I routinely delete emails that are transitory in nature, such as "call me" notes and reminders of blood drives.

> However, I am particularly diligent about saving my important emails. To avoid the problems caused by having too many emails in my in and out boxes, I would create archive folders and would routinely copy emails from the in and out boxes to an archive folder. I save such emails in my archive folders even if I print one and place it into the applicable case file. This way I am assured that if a question arises about my actions, especially conversations with defense counsel or negotiations, an email record of the action would be available.

> I put all of my emails related to the Benitez, Cantu, and Hernandez prosecutions in an archive folder that I created and named "Cantu & Co".

> While being interviewed for this declaration, I reported that I cannot say with absolute certainty that I did not unintentionally or accidentally delete an important email from an email folder before I moved it to an archive folder. I do not believe that Ms. Russell, the county's Public Records Officer, was aware of that. On May 29, 2018, while explaining my records management to DPA Denny, who is representing the county in this litigation, I told Ms. Russell about the possibility that I may not have saved all of my important emails.

Johnson also explained that she did not have, and possibly had never received, the letter referenced in the Otake e-mail.

13

Benitez alleges that the county did not disclose a letter from Jill Otake that is referenced in an email that I received from her on May 19, 2010. I recall receiving that email. It is attached as Attachment 1. Jill Otake is the U.S. Attorney who was, at that time, recently assigned to coordinate the prosecution of charges that could be addressed as a violation of federal law, such as unlawful possession of a machine gun, with local prosecuting attorneys. I had asked for confirmation, which I could share with Cantu's defense counsel, that the U.S. Attorney would not charge Cantu with a violation of federal law if he pled guilty as set forth in my offer. Ms. Otake responded with an email that set out the text of a "more formal letter to follow." . . .

I do not recall ever receiving a "more formal letter," and I have been told that a copy of a "more formal letter" is not in the Cantu case file. There are three reasons why I would not have a copy of that letter and why it is not in the case file. One, it would have been addressed to Cantu's lawyer. There was no need for a copy to be sent to me. Two, if I did get a letter, I probably gave it to Cantu's lawyer. Cantu's lawyer had a habit of not bringing necessary documents to court and then asking me for copies. If I had received a copy of the letter, it is probable that I gave it to Cantu's lawyer at a hearing on May 21, 2010, which had been set for a change of plea, but was continued instead, or at a hearing on May 26, 2010, where Cantu's lawyer told the court that Cantu would plead guilty and a hearing date was set for the plea and sentence. If I had a copy of the letter and did give it to Cantu's lawyer, I didn't get it back. Three, the May 19, 2010, email was sufficient assurance that the U.S. Attorney would not prosecute Cantu, causing his lawyer to report the change of plea; so, it is possible that a formal letter was never mailed.

On December 21, 2018, the trial court granted the County's motion for summary judgment and dismissed Benitez's PRA claim.[4] The trial court made findings of fact as follows:

After careful consideration of both parties' pleadings, briefing and oral argument, the Court has determined that the motion for summary judgment should be granted.

The initial request sought "any or all communications, emails, or other documents" that "mention, reference or relate to"

---

[4] A hearing on the motion was held on August 17, 2018. A transcript of the hearing on the motion was not made part of the record on appeal.

four named people, at least two of whom had had extensive contact with Skagit County's law enforcement and criminal justice agencies. An amended request added a fifth person. Given the broad scope of this language, a request for clarification was reasonable.

Confusion about the scope of the request continued. After the County produced an initial set of documents, Mr. Benitez amended the request to "all communications" relating to the five named individuals, deleting the reference to documents and maintaining the scope as those that "mention, reference or relate to" those people. The request specified that duplicate copies and blank pages contained in the files not be produced. The record of detailed correspondence between Mr. Benitez and the County's public records officer, Cori Russell, indicates Ms. Russell's continuing efforts to understand and meet the scope of the request. That confusion was not unreasonable, in the Court's view, given the broad scope of the request.

After reviewing the County's two initial productions of records, Mr. Benitez wrote Ms. Russell that he wanted copies of communications sent and received by Deputy Prosecuting Attorney Trisha Johnson, who had prosecuted his criminal case and had been involved in investigation and/or prosecution of several of the other named people.  Ms. Russell consulted DPA Johnson and learned that Johnson corresponded entirely by email. Russell searched Johnson's account in the email archives and found about 186 pages of email messages. She deleted the blank and duplicate pages and sent 175 pages to Mr. Benitez with a letter advising that "[I]f this is the type of information you're looking for, I may have about thirty more pages."

Mr. Benitez then asked about a letter, a copy of which he understood to have been sent to Ms. Johnson by a federal prosecutor in May 2010. Ms. Russell searched the email archives again, then searched the prosecution case file, but did not find the requested letter.[1]

After receiving the Complaint in this matter, Ms. Russell conferred with the County's counsel, and on his advice, sent copies of all emails contained in the case files regarding Mr. Benitez and Mr. Cantu, in case any of those emails were not contained in the email archives she had previously searched. She also consulted DPA Johnson, who told her that she, Johnson, sometimes deleted email messages she considered nonsubstantive or unnecessary to retain.  On learning this, Ms. Russell searched the pertinent case files and produced all the emails they contained. In short, the

15

record indicates that Ms. Russell made a reasonable and good faith effort to comply with the law in responding to the Plaintiff's records requests.

The Complaint also alleges that Skagit County violated the Public Records Act by failing to produce lists of potentially responsive documents; failing to prepare an index of emails in the prosecutor's files; and failing to produce a list of documents it claimed were exempt. But the record establishes that an index of potentially responsive documents did not exist, and could not have been compiled electronically. A public agency is not required to create indices in response to a disclosure or production request. Similarly, the County was not required to create an index of the prosecutor's emails. A list of claimed exemptions was not necessary because the County's concerns about DPA Johnson's work product became moot when the request was clarified and limited to Johnson's correspondence. DPA Johnson did not share her work product with anyone, she testified, and email correspondence did not include work product.

Lastly, the Complaint asserts that Skagit County has failed to implement procedures for responding to records requests, as required by the Public Records Act. This claim fails because the County produced a copy of its Public Records Policy and demonstrated, through the declarations of Ms. Russell, that the policy predates by some time the records request at issue in this matter.

In summary, the evidence does not [show] that Skagit County violated the Public Records Act. The request was complex and its scope remained unclear even after it was amended; Ms. Russell's confusion was understandable. The record demonstrates Ms. Russell's continuing efforts to identify and produce all the requested records.

As the Court finds that the Public Records Act was not violated, the motion for summary judgment of dismissal is granted.

[1] DPA Johnson testified in her declaration that the letter had been sent by the U.S. Attorney's office to defense counsel in one of several related cases she was handling, with a copy to her. As she was a third party to the letter, which did not affect her prosecution of the defendants, Johnson did not photocopy the letter. Ms. Johnson testified that she believed she shared her copy of the letter with one of the lawyers representing defendants in the case or cases she was prosecuting, and did not get back her copy.

Benitez appeals.

II

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. Gronquist v. Dep't of Corr., 159 Wn. App. 576, 582-83, 247 P.3d 436 (2011). Summary judgment is appropriate if the supporting materials, viewed in the light most favorable to the nonmoving party, show "'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005) (quoting CR 56(c)). "Once the moving party has met this burden, however, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial." Sisters of Providence v. Snohomish County, 57 Wn. App. 848, 850, 790 P.2d 656 (1990). The nonmoving party may not rely on speculation alone. Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011).

We likewise review challenges to government action under the PRA de novo. Gronquist, 159 Wn. App. at 582. Where, as here, "the record consists only of affidavits, memoranda of law, and other documentary evidence," this court "stands in the same position as the trial court" and "is not bound by the trial court's findings on disputed factual issues." Progressive Animal Welfare Soc'y v. Univ. of Wash. (PAWS), 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994).

III

Benitez contends that the County violated the PRA by failing to conduct an adequate search for responsive records. We agree.

The PRA "'is a strongly worded mandate for broad disclosure of public records.'" PAWS, 125 Wn.2d at 251 (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). "Agencies are required to disclose any public record on request unless it falls within a specific, enumerated exemption." Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). To adequately disclose documents, an agency must conduct "a sincere and adequate search for records." Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014). An adequate search is one that is "reasonably calculated to uncover all relevant documents." Neigh. All., 172 Wn.2d at 720. "To determine whether a search is reasonable, we focus not on whether a document exists that is responsive to the request, but on the nature of the search process." Rufin v. City of Seattle, 199 Wn. App. 348, 357, 398 P.3d 1237 (2017). "[A]gencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered." Neigh. All., 172 Wn.2d at 720. "The search should not be limited to one or more places if there are additional sources for the information requested. Indeed, 'the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" Block v. City of Gold Bar, 189 Wn. App. 262, 271, 355 P.3d 266 (2015) (internal quotation marks omitted) (quoting Neigh. All., 172 Wn.2d at 719-20). "What will be considered reasonable will depend on the

18

facts of each case." Neigh. All., 172 Wn.2d at 720. The agency bears the burden of showing its search was adequate. Neigh. All., 172 Wn.2d at 721. Because the PRA considers the failure to properly respond as a violation, the failure to adequately search is also considered a violation. Neigh. All., 172 Wn.2d at 721.

Russell initially began searching for responsive records in the case files. By July 24, 2016, Russell was aware that what Benitez was seeking was "correspondence," meaning e-mails, letters, faxes, phone calls, text messages, and the like. Because Johnson only corresponded by e-mail, Russell appropriately recognized that Johnson's e-mail account would be a likely source of responsive records. But Russell abandoned her search of the case files, reasoning that all e-mails sent to or from Johnson remained in Johnson's e-mail account. This was not the case. As Johnson stated in her declaration, she occasionally deleted e-mails from her e-mail account in order to free up space. Though Johnson was diligent about saving electronic copies of "important" e-mails, she admitted that it was possible she could have unintentionally deleted something.

As it turned out, 11 e-mails that were not discovered in Russell's search of Johnson's e-mail account were later discovered in the case file. Some were only marginally responsive to Benitez's request, such as the subpoenas sent by Johnson's legal assistant on which Johnson was copied as an addressee. But several were unquestionably responsive, including e-mails Johnson sent discussing discovery, Benitez's offender score, and the trial verdict.

Russell had experience handling public records requests for documents held by the prosecutor's office. She appropriately discussed the storage and maintenance of records with Maurer. But she did not contact Johnson directly to ask if Johnson had deleted any of her e-mails, or whether paper copies of those e-mails might be in the case files. Russell's search methodology did not account for this possibility. An agency cannot limit its search to only one record system if responsive documents are likely to be found in other systems. Also, as Russell stated in her declaration, it is a best practice to disclose all copies of a responsive record even if they are duplicates of the same record found elsewhere. Under the facts of this case, Russell's search was not reasonably calculated to uncover all relevant documents. The County failed to show that there was no genuine issue of material fact that it violated the PRA. The trial court erred in granting summary judgment.[5]

Benitez also contends that the County violated the PRA when Russell held back documents she characterized as attorney work product without providing any further written explanation. We disagree.

When an agency refuses to allow inspection of a public record, it must "include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). Failure to provide an explanation

---

[5] The trial court concluded that the County did not violate the PRA because Russell ultimately produced all the responsive e-mails after Benitez filed his complaint. But "[s]ubsequent events do not affect the wrongfulness of the agency's initial action to withhold the records if the records were wrongly withheld at that time." Spokane Research & Defense Fund v. City of Spokane, 155 Wn.2d 89, 103-04, 117 P.3d 1117 (2005).

constitutes "silent withholding," which is "clearly and emphatically" prohibited by the PRA. PAWS, 125 Wn.2d at 270.

Benitez appears to be referring to Russell's July 14, 2016 letter, in which Russell stated that she had obtained the prosecution case files and "pulled out" any attorney work product. But Russell explained that she sent this letter before she understood that Benitez wanted Johnson's correspondence, not everything in the case file. According to Russell, all of Johnson's correspondence "was with third persons who would not have been covered by an attorney client relationship" and Johnson "did not email, fax, or otherwise send her work product to anyone." Thus, Russell did not withhold any records responsive to Benitez's request, and no explanation was required by RCW 42.56.210(3).

Benitez argues that the County was required to comply with RCW 42.56.210(3) at the time it withheld attorney work product, regardless of whether the documents were responsive. But Benitez cites no authority in support of the claim that an agency must identify exemptions for nonresponsive documents. And a failure to provide nonresponsive documents is not "withholding." See Forbes v. City of Gold Bar, 171 Wn. App. 857, 866, 288 P.3d 384 (2012) ("The personal e-mails are not responsive to Forbes' requests and, therefore, nothing was withheld and no log document needed to be created.").

We similarly reject Benitez's claim that the trial court erred by failing to conduct an in camera review to determine whether the withheld records were exempt as attorney work product. The County met its burden to show that no responsive records were withheld because Johnson did not send or receive

attorney work product. The burden then shifted to Benitez to show that the County withheld responsive documents. Benitez offers nothing more than speculation that it did so. This is insufficient to create a genuine issue of material fact for trial.

Benitez next argues that the County violated RCW 42.56.100, which provides that "[a]gencies shall adopt and enforce reasonable rules and regulations . . . consonant with the intent of this chapter to provide full public access to public records." He cites to the County's policy requiring that "[e]ach Records Assistant shall be knowledgeable of the public records in the possession and control of that department or office such that they are able to assist both the County Public Records Officer and person requesting records in determining where documents are located and what documents are being sought by the requestor." He contends that the County clearly violated its own policy because Russell stated in her declaration: "I am the only person in my office qualified to review and make final decisions on Public Records Act (PRA) requests that go beyond a plain vanilla request." But Russell stated only that she has supervisory authority over complex public records requests. Nothing in Russell's statement indicates that the County employees were unable to assist Russell or members of the public with public records requests. Benitez's claim is without merit.

IV

The County argues that, even if it violated the PRA, the facts do not support a finding of bad faith. We do not address this issue.

22

A court is prohibited from awarding penalties for PRA violations to an individual who, as here, is incarcerated at the time the PRA action is filed, "unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1). But "the failure to conduct a reasonable search or the failure to follow policies in a search does not necessarily constitute bad faith." Faulkner v. Dep't of Corr., 183 Wn. App. 93, 102, 332 P.3d 1136 (2014). "[B]ad faith incorporates a higher level of culpability than simple or casual negligence." Faulkner, 183 Wn. App. at 103. To establish bad faith, "an inmate must demonstrate a wanton or willful act or omission by the agency." Faulkner, 183 Wn. App. at 103. "Wanton" means "'[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.'" Faulkner, 183 Wn. App. at 103 (alteration in original) (quoting BLACK'S LAW DICTIONARY 1719-20 (9th ed. 2009)).

The trial court found that the County did not violate the PRA. Accordingly, it made no findings regarding bad faith or penalties.[6] The parties may address this issue on remand.

V

Benitez requests an award of attorney fees and costs on appeal. He cites no authority supporting an award of attorney fees for a pro se litigant. Instead, he simply cites the PRA's attorney fee provision, which provides for an award of costs, including attorney fees, to any person who prevails against an agency in a

___

[6] While the trial court concluded that "Russell made a reasonable and good faith effort to comply with the law," this appears simply to be the court's word choice in assessing the reasonableness of the County's actions, not a determination of whether those actions constituted bad faith for the purpose of assessing penalties.

PRA action. But a nonlawyer litigating a PRA action incurs no attorney fees and is not entitled to a fee award under RCW 42.56.550(4). Mitchell v. Dep't of Corr., 164 Wn. App. 597, 608, 277 P.3d 670 (2011). However, Benitez, as the party that has substantially prevailed on review, is entitled to an award of costs actually incurred on appeal pursuant to RAP 14.2. Subject to compliance with RAP 14.4, a commissioner of our court will enter an appropriate order.

Reversed and remanded for further proceedings consistent with this opinion.

Dwyer, J.

WE CONCUR:

Mann, C.J.

Verellen, J.