IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CLARENCE JAY FAULKNER, | ) | No. 31658-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| WASHINGTON DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

CULP, J.* — Newly enacted RCW 42.56.565(1) prohibits the award of penalties to inmates for violations of the Public Records Act (PRA), chapter 42.56 RCW, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy the public record. Inmate Clarence Faulkner submitted a public records request to the Washington State Department of Corrections (DOC) for two documents related to rejected mail. After the initial production was incomplete, Mr. Faulkner sought penalties from the DOC for a violation of the PRA. The trial court found that a violation

---

\* Judge Christopher E. Culp is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

occurred, but declined to award penalties because there was no showing of bad faith as required by RCW 42.56.565(1). Mr. Faulkner appeals. He contends that the DOC's dilatory search and disclosure of the identifiable documents constituted bad faith. We conclude that the DOC did not act in bad faith and affirm the decision of the trial court.

FACTS

On July 11, 2012, the DOC received a PRA request from Mr. Faulkner. He requested disclosure of:

> 1. A copy of the Coyote Ridge Corrections Center's [CRCC] "signature sheet" for the issuance of incoming Legal Mail from the Thurston County Superior Court addressed to Clarence Jay Faulkner #842107 received on July 2, 2012 and logged in at 11:36 a.m. by OA3 Mr. Michael True. This signature sheet contains 9 entries and the entry for Clarence Faulkner is line 6. In the place where prisoner Faulkner would normally sign his name is written "**NOT RECEIVED**" and is signed by prison guard V. Miller and possibly another prison guard.
> If you assert that this document does not exist, or is exempt from disclosure, please so state.
> 2. A copy of the CRCC Local **Mail Rejection Disposition Notice Mail Rejection F-4-60**.

Clerk's Papers (CP) at 201. On July 18, public disclosure specialist Paula Terrell responded to Mr. Faulkner. She summarized his request and notified him that she would respond to him on or before August 24, 2012, regarding the status of his request.

2

Ms. Terrell contacted the CRCC and requested:

1.      A copy of the Coyote Ridge Corrections Center "signature sheet" for the issuance of incoming legal mail from the Thurston County Superior Court addressed to you Clarence Faulkner #842107 and received on July 2, 2012 and logged in at 11:36 a.m. by OA3 Michael True;

2.      Coyote Ridge Corrections Center local mail rejection disposition notice mail rejection #F460.

CP at 203. A responsive document was provided to Ms. Terrell.

On August 29, the DOC informed Mr. Faulkner that his requested record was ready for disclosure after payment of a fee. The completed request contained one page.

Mr. Faulkner paid the fee and received CRCC's legal mail log for July 2, 2012. DOC indicated to Mr. Faulkner that the matter was closed. The legal mail log contained Mr. Faulkner's name and inmate number and listed Mr. Faulkner's mail from Thurston County Superior Court. However, the log was blank and did not contain any signatures.

Mr. Faulkner notified DOC that he requested the completed legal mail log, not a blank original. A few days later, Mr. Faulkner contacted DOC again and asked about the local mail rejection disposition notice. Mr. Faulkner filed a formal appeal with the DOC on these matters. DOC acknowledged the complaint and notified Mr. Faulkner that Ms. Terrell was out of the office but would respond before October 17.

3

The public disclosure unit of the DOC informed Mr. Faulkner that an additional search for responsive records would be conducted and he would receive further communication from the DOC on or before December 10. Within a few days of receiving the appeal, the DOC located a copy of the July 2, 2012 legal mail log, complete with signatures. The DOC also attempted to locate the local mail rejection disposition notice F-4-60 by tracking down the mail rejection packet associated with this form. The rejection packet could not be located. The packet was last seen when it was mailed to DOC headquarters by the CRCC mailroom. After multiple searches, DOC headquarters claimed that it never received the packet.

As a result of this search, on December 7, the DOC provided Mr. Faulkner with a copy of the July 2, 2012 signed legal mail log. The DOC also notified Mr. Faulkner that the local mail rejection disposition notice F-4-60 could not be located. DOC closed its inquiry into the request.

During this second search for the requested documents, Mr. Faulkner filed suit against the DOC, complaining that the DOC violated the PRA in responding to his request for the July 2, 2012 legal mail log and the local mail rejection disposition notice.

The trial court held a show cause hearing and a determination of penalties hearing. The DOC presented the declaration of Randall Smith, the mailroom supervisor at CRCC.

4

Mr. Smith explained the DOC process for rejecting unauthorized mail. He stated that there was no formal disposition notice for Mr. Faulkner because the CRCC mail room does not use such a notice. Instead, when mail is rejected, the inmate is given a mail rejection notice. The inmate can appeal this rejection notice. If appealed, the entire mail rejection packet is sent to DOC headquarters. If there is no appeal or if the assistant secretary upholds the rejection and sends the mail rejection packet back, the inmate is given the opportunity to decide how to dispose of the rejected items. Inmates complete an "Options For Rejected Mail" form to alert the mailroom of the inmate's choice for disposition of the rejected mail. Once an inmate makes a disposition decision, this decision may be noted in the mail rejection log. No formal mail disposition notice is given to offenders, which was the document requested by Mr. Faulkner.

Mr. Faulkner used an "Options For Rejected Mail" form to notify the mailroom that he wished to appeal the mail rejection and asked the mailroom to continue to hold the mail items. CP at 186. He did not choose a method of disposition of the rejected mail. His entire mail packet was sent to DOC headquarters. Mr. Smith stated that he was familiar with Mr. Faulkner and knew of the mail rejection notice issued to him. However, he was unable to determine the ultimate disposition for the mail because he did not receive the F-4-60 mail rejection packet back from headquarters.

5

The trial court found no violation relating to the request for the local mail rejection disposition notice because no such record existed. However, for the signed legal mail log request, the court found that the DOC violated the PRA when it initially produced an incomplete version of the requested document. Nevertheless, the court also found that the DOC did not act in bad faith because the initial production of the incomplete log was an unfortunate mistake, and Mr. Faulkner failed to provide any evidence that the delay or denial was intentional. Because there was no showing of bad faith as required by RCW 42.56.565(1), the court concluded that Mr. Faulkner was not entitled to penalties for the violation. The court awarded costs to Mr. Faulkner in connection with the action as allowed by RCW 42.56.550(4).

Mr. Faulkner appeals.

## ANALYSIS

*Local Mail Rejection Disposition Notice.* Mr. Faulkner contends that the DOC violated the PRA by failing to respond to his request for "CRCC Local Mail Rejection Disposition Notice Mail Rejection F-4-60." He maintains that the DOC should have interpreted this request to mean the "Options For Rejected Mail" form that is part of the mail disposition process, and that the DOC waited an unreasonable amount of time before telling him that the local mail rejection disposition notice did not exist.

6

The trial court applies de novo review to agency actions challenged under the PRA. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009).

The PRA "requires all state and local agencies to disclose any public record upon request, unless it falls within certain specific enumerated exemptions." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 734, 218 P.3d 196 (2009). "The provisions of the act are to be construed liberally to promote the complete disclosure of public records." *Bonamy v. City of Seattle*, 92 Wn. App. 403, 408, 960 P.2d 447 (1998).

An agency does not have a duty to produce a record that does not exist. *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004). If the requested record does not exist, there is no agency action for the court to review under the PRA. *Id.* at 137.

A party seeking public records under the PRA must, "at a minimum, provide notice that the request is made pursuant to the [PRA] and identify the documents with reasonable clarity to allow the agency to locate them." *Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d 26 (2004).

The DOC did not violate the PRA in response to Mr. Faulkner's request for "CRCC Local Mail Rejection Disposition Notice Mail Rejection F-4-60." As explained by Mr. Smith, this document did not exist. The DOC did not have a duty to produce a

7

record that was not in existence. Without a duty, there is no agency action to review. The DOC did not deny Mr. Faulkner an opportunity to review or copy an existing public record. *See Zink v. City of Mesa*, 162 Wn. App. 688, 256 P.3d 384 (2011).

Also, the DOC did not violate the PRA by failing to disclose the document entitled "Options For Rejected Mail" in response to Mr. Faulkner's request for the "CRCC Local Mail Rejection Disposition Notice Mail Rejection F-4-60." The document that Mr. Faulkner requested does describe the "Options" document. The "Options" document is not a notice of mail rejection, but rather a form that inmates use to determine disposal of the rejected mail. Mr. Faulkner's request did not identify the "Options" document with reasonable clarity to allow the DOC to locate it. The trial court correctly concluded that the DOC did not violate the PRA in regard to this request.

The trial court correctly concluded that the DOC did not violate the PRA in regard to the CRCC Local Mail Rejection Disposition Notice Mail Rejection F-4-60.

*Signed Legal Mail Log.* Mr. Faulkner assigns error to the trial court's finding that the DOC did not act in bad faith in regard to the DOC's failure to produce a signed version of the legal mail log. Mr. Faulkner maintains that the DOC's delayed response in producing the completed legal mail log showed evasiveness, a lack of diligence, and willful rendering of poor performance, all of which meet the legal definition of bad faith.

"Whether an agency acted in bad faith under the PRA presents a mixed question of law and fact, in that it requires the application of legal precepts (the definition of 'bad faith') to factual circumstances (the details of the PRA violation)." *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 51-52, 313 P.3d 457 (2013), *review denied*, 180 Wn.2d 1016 (2014). When underlying facts are uncontested, we apply de novo review to ascertain whether the facts amount to bad faith. *Id.* at 52.

RCW 42.56.565(1) applies to requests by incarcerated individuals. RCW 42.56.565(1) states:

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date that the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

Recently, Division Two of this court became the first court to address the interpretation of bad faith in the context of RCW 42.56.565(1). *Francis*, 178 Wn. App. at 52-63. It held in *Francis* that in addition to intentional acts,

> failure to conduct a reasonable search for requested records also supports a finding of "bad faith" for purposes of awarding PRA penalties to incarcerated requestors. This standard does not make an agency liable for penalties to incarcerated persons simply for making a mistake in a record search or for following a legal position that was subsequently reversed. In addition to other species of bad faith, an agency will be liable, though, if it fails to carry out a record search consistently with its proper policies and within the broad canopy of reasonableness.

9

*Id.* at 63 (footnote omitted). On reconsideration, the court clarified the holding, stating that the failure to conduct a reasonable search or the failure to follow policies in a search does not necessarily constitute bad faith. *Id.* at 63 n.5. "We hold below that among other potential circumstances, bad faith is present under RCW 42.56.565(1) if the agency fails to conduct a search that is both reasonable and consistent with its policies." *Id.* The court determined reasonableness by examining the circumstances of the case. *Francis*, 178 Wn. App. at 63 n.5.

The appeals court in *Francis* affirmed the trial court and determined that the agency's actions constituted bad faith when the clerk spent 15 minutes searching for the records, did not record that she searched in all the usual places for the records, and produced a document that did not fit the request made by the inmate.[1] *Id.* at 64. Furthermore, the agency waited eight months after the action was filed to produce the document that did fit the request. *Id.*

---

[1] Mr. Francis requested documents concerning the prohibition against fans and hot pots, but the agency initially provided a copy of a policy permitting the items. *Id.* at 64 n.8. The agency conceded that it violated the PRA, but challenged the penalty amount. *Id.* at 49. The trial court in *Francis* found no agency dishonesty, recklessness, or intentional noncompliance, but it concluded that the agency acted in bad faith based on aggravating factors used to determine penalties under *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* V). *Francis*, 178 Wn. App. at 50. The appeals court upheld the bad faith finding based on the facts of the case, without

While *Francis* provides guidance in applying the bad faith standard in RCW 42.56.565, we take this opportunity to further clarify the standard. We do this because a finding of bad faith is now a threshold that must be met before penalties can be awarded to an inmate under RCW 42.56.565(1).[2] While a finding of bad faith is up to the discretion of the trial court judge, some framework is appropriate to adequately guide how such discretion should be exercised. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 465, 229 P.3d 735 (2010) (*Yousoufian* V).

In the PRA context, bad faith incorporates a higher level of culpability than simple or casual negligence. We hold that to establish bad faith, an inmate must demonstrate a wanton or willful act or omission by the agency. "Wanton" is defined as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." BLACK'S LAW DICTIONARY 1719-720 (9th ed. 2009). Further, "'[w]anton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not.'"

---

determining the applicability of the *Yousoufian* V factors. *Francis*, 178 Wn. App. at 64.

[2] Ordinarily, a showing of bad faith is not required in order for the penalties to be awarded under the PRA. *Am. Civil Liberties Union v. Blaine Sch. Dist. No. 503*, 95 Wn.

*Id.* at 1720 (quoting ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 879-80 (3d ed. 1982)).

This level of culpability in bad faith determinations is supported by prior PRA decisions. Bad faith continues to hold the high end of the culpability spectrum in PRA cases. *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 435, 98 P.3d 463 (2004) (*Yousoufian* II) (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997)). In *Yousoufian v. Office of Ron Sims*, 137 Wn. App. 69, 151 P.3d 243 (2007) (*Yousoufian* III), Division One of this court set out degrees of agency culpability in an attempt to provide guidance to lower courts in determining PRA penalty amounts. The court clearly considered bad faith more culpable conduct and separate from forms of negligence. *Id.* at 79-80. The court held,

> Instances where the agency's actions or inactions constituted gross negligence would call for a higher penalty than ordinary negligence, and instances where the agency acted wantonly would call for an even higher penalty. Finally, instances where the agency acted willfully and in bad faith would occupy the top end of the scale. Examples of bad faith would include instances where the agency refused to disclose information it knew it had a duty to disclose in an intentional effort to conceal government wrongdoing and/or to harm members of public. Such examples fly in the face of the [public disclosure act, chapter 42.17 RCW] and thus deserve the harshest penalties. We decline to attach firm dollar amounts to these degrees of culpability, but offer them instead as a guide for the trial court's exercise of discretion.

App. 106, 111, 975 P.2d 536 (1999).

12

*Id.* at 80.

Admittedly, the Supreme Court in *Yousoufian* V determined that the culpability tiers were inadequate to address the complexity of the PRA penalty analysis. *Yousoufian* V, 168 Wn.2d at 460. However, the court recognized that the agency's culpability is the basis for setting PRA penalties, with bad faith being the primary factor taken into consideration. *Id.* Here, we continue to focus on the agency's culpability to define bad faith and to establish a threshold for an award of penalties under RCW 42.56.565(1). Bad faith is associated with the most culpable acts by an agency. Penalties are owed when an agency acts unreasonably with utter indifference to the purpose of the PRA.

*Francis* is an example of a wanton act made in bad faith—the agency knew it had a duty to conduct an adequate search for the requested records but instead performed a "cursory search and delayed disclosure well short of even a generous reading of what is reasonable under the PRA." *Francis*, 178 Wn. App. at 63. This wanton act of performing an unreasonable search contrary to agency policy resulted in the appeals court upholding the trial court's finding of bad faith. *Id.* at 63-64. By contrast, withholding names of police officers in a good faith effort to protect the privacy and the safety of the

officers does not constitute a wanton act. *See King County v. Sheehan*, 114 Wn. App. 325, 356, 57 P.3d 307 (2002).

Defining bad faith in this manner meets the legislature's intent in enacting RCW 42.56.565(1). By adding the bad faith requirement, the legislature increased the level of culpability needed for an award to an inmate. RCW 42.56.565(1). According to legislative committee reports, the bill underlying RCW 42.56.565(1) was introduced as a measure to curb abuses by inmates who use the PRA to gain automatic penalty provisions when an agency fails to produce eligible records. S.B. 5025, 62d Leg., Reg. Sess. (Wash. 2011). Initially, the measure barred inmates from recovering penalties all together. *Id.* After receiving public comment regarding the effect the elimination of penalties would have on legitimate inmate PRA cases, the bill was amended to include the bad faith requirement and passed as amended. SUBSTITUTE S.B. 5025, 62d Leg., Reg. Sess. (Wash. 2011). "Thus, the legislature plainly intended to afford prisoners an effective records search, while insulating agencies from penalties as long as they did not act in bad faith." *Francis*, 178 Wn. App. at 60. By incorporating the bad faith requirement, the legislature allows penalties for inmates only when the conduct of the agency defeats the purpose of the PRA and deserves harsh punishment.

14

Requiring an inmate to show wanton or willful conduct as bad faith before penalties can be awarded does not violate the general purpose of the PRA or the specific purpose of the PRA penalty provision. The general purpose of the PRA is to ensure sovereignty of the people and government accountability by providing full access to information concerning government conduct. *Amren*, 131 Wn.2d at 31. For penalties under the PRA, the purpose of the provision is to promote government transparency and to deter improper denials of access to public records. *Yousoufian* V, 168 Wn.2d at 461. Inmates can still gain access by requesting records even though penalties may be harder to obtain. Additionally, allowing penalties to punish wanton and willful agency misconduct continues to act as a deterrent to improper denials.

Applying the bad faith standard established here and in *Francis*, the trial court in Mr. Faulkner's action correctly found that the DOC did not act in bad faith in responding to his request for the legal mail log. There is no evidence of wanton or willful misconduct. The DOC made a timely and reasonable effort to obtain the document. In its initial response to Mr. Faulkner's request for the legal mail log, Ms. Terrell, a public disclosure specialist for the DOC, contacted the CRCC within seven days of receiving the request and asked that the CRCC gather the responsive documents.

15

Admittedly, Ms. Terrell's request sent to CRCC did not indicate that the words "not received" should be written on the document where Mr. Faulkner would normally sign his name, and this omission resulted in production of an unsigned version of the desired document. However, Mr. Faulkner fails to show that the inadvertent error by Ms. Terrell in transmitting the request was unreasonable or lacked diligence. To the contrary, the request was detailed. Ms. Terrell included the name of the document and other precise identifying features including Mr. Faulkner's identification number, the date and time the mail was logged in, and the name of the DOC employee who logged in the mail. Ms. Terrell stated in her declaration that she did not realize that leaving out the specific information regarding the "not received" notation would change the nature of Mr. Faulkner's request. CP at 82. She recovered the responsive document once she was informed of her inadvertent mistake.

Also, contrary to Mr. Faulkner's assertion, the timing of the DOC's production of the signed legal mail log did not constitute bad faith. The DOC did not have an obligation to produce the document as soon as it was acquired. The DOC held the signed legal mail log until it completed its investigation into the remainder of Mr. Faulkner's records request. The PRA does not require piecemeal production of documents. *Ockerman v. King County Dep't of Dev. & Envtl. Servs.*, 102 Wn. App. 212, 219, 6 P.3d

16

1214 (2000). The DOC gave Mr. Faulkner a reasonable time line for producing the documents and complied with this time line. The trial court correctly concluded that the DOC did not act in bad faith.

The DOC's actions in Mr. Faulkner's records request do not meet the standard for bad faith. The DOC did not act unreasonably or maliciously while being utterly indifferent to the consequences when it inadvertently omitted two words when requesting the records from another agency employee. Unlike the dilatory search in *Francis*, here the DOC conducted a reasonable search and produced an unsigned version of the document Mr. Faulkner requested. The error in production was the result of an inadvertent mistake in summarizing the request. When Mr. Faulkner alerted the DOC to the mistake, the DOC acquired the signed version of the legal mail log and provided it to Mr. Faulkner by the deadline provided to him.

The trial court did not abuse its discretion. The DOC did not act in bad faith in processing and handling Mr. Faulkner's request for the legal mail log. The trial court properly denied awarding penalties. Additionally, because Mr. Faulkner is not the prevailing party, his request for costs on appeal is denied. RCW 42.56.550(4).

17

No. 31658-1-III
*Faulkner v. Dep't of Corr.*

Affirm.

_____
Culp, J.P.T.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.