# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMES CURTIS, | No. 54758-9-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, A subdivision of the state of Washington, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — James Curtis, a Department of Corrections inmate, attempted to send his wife a message using an electronic messaging service for inmate communications. The Department reviewed the message, determined it contained restricted information, rejected it, and twice notified Curtis about the rejected message. Curtis then requested the rejection notices through a Public Records Act (PRA) request. The Department searched for the records, but due to Curtis's imprecise language and its own miscommunication with staff responsible for the search, it was unable to find any documents responsive to Curtis's request. Curtis sued the Department alleging a PRA violation. The trial court concluded that the Department had violated the PRA, but it ruled that the Department had not acted in bad faith, and therefore, Curtis was not entitled to penalties. Curtis appeals, arguing the Department did act in bad faith by refusing to provide records even after he clarified what records he wanted. The Department argues its staff were confused about the records and that it did not deliberately try to hide records.

We affirm the trial court's ruling that the Department did not act in bad faith. We also affirm the trial court's dismissal of Curtis's penalty claim.

FACTS

Curtis, an inmate at the Department of Corrections, attempted to send his wife a message through a third-party electronic messaging service called JPay. The Department uses JPay for inmate communications. JPay allows the Department to review messages before sending them to the inmate's intended recipient. If a message contains restricted information, the Department will reject the message and respond to the inmate with a rejection notice that includes the basis for the rejection. The Department does this by selecting the reason for rejection from drop-down menus; the rejection message is then sent to the inmate. Rejection messages are not downloaded or stored by the Department.

The Department twice rejected Curtis's message to his wife via JPay. Curtis submitted a records request to the Department requesting multiple records. At issue here is the request he submitted for "Two incoming JPay e-messages from [a] JPay Representative on the following dates: 11/9/17 and 11/14/17." Clerk's Papers (CP) at 337 (emphasis omitted). The Department responded to Curtis's request three days after receiving it and clarified that he was requesting, "The incoming J[P]ay messages sent to you from a J[P]ay employee on the following dates: November 9, 2017, and November 14, 2017." CP at 338. There is no record that Curtis disagreed with the Department's clarification of his request.

As a general matter, the Department responds to public records requests pertaining to the inmate messaging system per its PRA policy, and the Department has provided guidance to staff through a news brief, which states,

> JPay records housed in JPay's system and on their servers which are not used for agency business are not agency public records and therefore not subject to disclosure. They do not need to be gathered from the JPay system in response to a public records request.
>
> However, JPay records that have been used in agency business <u>are</u> public records and must be gathered, reviewed and provided consistent with any other agency public record.

CP at 312.

The Department distributed Curtis's request to multiple staff to conduct the search. A staff person at the Washington State Penitentiary (WSP) mail room requested clarification on whether messages stored in the JPay inmate messaging system were subject to disclosure. A Department security specialist clarified that only messages that the Department has downloaded or printed are subject to disclosure. The mailroom staff person and others conducted a search of multiple locations for the requested messages but they did not find any responsive messages from "a J[P]ay Representative" that Curtis had requested. CP at 286, 345. The Department responded to Curtis and provided multiple requested records that were responsive to other portions of Curtis's request not at issue in this appeal. But the Department indicated that no responsive records pertaining to Curtis's request for records from a JPay Representative were found. The Department did not search for JPay messages because the mailroom staff believed that only JPay messages that had been downloaded or printed by the Department were covered by the PRA. The Department also requested clarification of Curtis's request.

Curtis appealed to the Department's Public Disclosure Appeals Office and clarified, "These two JPay e-messages concern[] the Washington State Penitentiary's decision to reject my outgoing e-message (11/9/17), and the Department of Corrections' Headquarters' decision to uphold that rejection (11/14/17), and these two e-messages could not have been deleted and/or destroyed without violating [the Department's] Records Retention Schedule." CP at 284. Based

on this clarification, the Department conducted an additional search, but did not clarify for staff what type of records staff should be searching for and only stated, "Please conduct a second search contacting the entities outlined in the J[P]ay news brief. Also, please use appropriate responsive language from the news brief." CP at 254.

The Department again clarified with Curtis that it would conduct an additional search for "[t]he two J[P]ay messages sent to you on November 9, 2017 and November 14, 2017, at least one of which had the letter I.D. # 346180785." CP at 288. Curtis's request was later described as "messages [] in regard to WSP rejecting outgoing mail." CP at 260. The same WSP staff person who asked the Department about searching JPay for the requested records again requested clarification. Department headquarters responded that the messages in the JPay system were exempt from public records requests unless they had been used in agency business. There is no record that mailroom staff who conducted a portion of the search received the clarification that the records requested were JPay messages from the Department rejecting outgoing messages from inmates.

Department staff conducted the second search without searching the JPay system and found no responsive records. In a final letter to Curtis, the Department stated that messages in JPay are not subject to disclosure unless they were used for agency business. The letter also stated, "If you are aware that the [D]epartment has used the requested JPay messages in the conduct of agency business, please let us know how you believe the JPays were used and we can perform an additional search." CP at 301.

Curtis sued the Department for failing to provide the requested records. He argued that the Department violated the PRA and that he was owed penalties because the Department acted in bad

faith. The Department provided Curtis's requested documents prior to the trial court's decision.

The trial court concluded that the Department violated the PRA by failing to disclose the records.

After a penalty hearing, the trial court issued an order with the following findings of fact:

> 1. Consistent with the Court's previous ruling, the two incoming JPay messages requested by Mr. Curtis should have been provided in response to PRU-51796. As the Court found in its previous order, these two pieces o[f] correspondence were essentially "substitute mail rejection notices."
> 2. However, it was not clear from the original request the relationship that these records had with Department processes and procedures. Specifically, the request lacked any indication that it was seeking mail rejection documents. Instead, the language of the request for "the incoming JPay e-messages sent to you from a JPay representative on the following dates: November 9, 2017, and November 14, 2017" did not make that connection clear. The court acknowledges that Plaintiff clarified his request in his administrative appeal, however at the time of the request, it was not clear to Department officials that the documents should have been provided.
> 3. Because of this lack of clarity in the request language, the Department employees who were searching for the records sought clarification from other Department officials in an imprecise manner. This did not provide the employees accurate guidance specific to the nature of these records here.
> 4. Under such circumstances, the Department did not deny the records in bad faith. There is no indication that the Department was making an attempt to hide records from Mr. Curtis. Rather there was an attempt by Department staff to get guidance and respond to Mr. Curtis's request properly. The Department merely made a mistake in responding to the request here because of the language of [Curtis's] request.

CP at 122-23.

Relying on these findings, the trial court concluded that the Department had not acted in bad faith and therefore penalties were unavailable. Curtis appeals the trial court's penalty ruling.

ANALYSIS

I. STANDARD OF REVIEW

Whether an agency acted in bad faith is a mixed question of law and fact. *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 51-52, 313 P.3d 457 (2013). We review a trial court's findings of fact for substantial evidence, which is a "sufficient quantum of evidence in the record to persuade a

reasonable person that a finding of fact is true." *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008). We conduct de novo review of a trial court's conclusion that a set of facts establish bad faith. *Francis*, 178 Wn. App. at 52.

II. LEGAL PRINCIPLES

The PRA requires each agency, "in accordance with [its] published rules," to disclose public records unless an exemption applies. RCW 42.56.070(1); *Soter v. Cowles Pub. Co.*, 162 Wn.2d 716, 730, 174 P.3d 60 (2007). The PRA mandates broad disclosure of public records, and courts liberally construe its provisions to effectuate that mandate. *Id.* at 731. When a party prevails against an agency due to its failure to disclose records, that party may seek financial penalties against the agency. *Id.* at 750; RCW 42.56.550(4). In order to receive penalties, an incarcerated person who prevails against an agency in a PRA claim must show that the agency acted in bad faith in failing to produce the records. RCW 42.56.565(1); *Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 102, 332 P.3d 1136 (2014).

In the first case to interpret the bad faith requirement of RCW 42.56.565(1), this court concluded that due to the broad mandate of the PRA, an inmate should not be required to prove intentional misconduct to receive a penalty. *Francis*, 178 Wn. App. at 61-62. Instead, an incarcerated person must prove an agency acted in bad faith to garner penalties. The *Francis* court concluded that an incarcerated person may prove an agency acted in bad faith by showing it failed to conduct a reasonable search for requested records. *Id.* at 63. Further, the agency acts in bad faith if it fails to carry out a record search consistently with its proper policies and within the broad canopy of reasonableness. *Id.* at 63.

In *Francis*, the court concluded the Department acted in bad faith by spending only 15 minutes on Francis's request, initially providing records that were unresponsive to the request, waiting eight months to eventually provide the requested documents, and failing to search for the records in places where they are normally stored. *Id*. at 64.

After *Francis*, the court in *Faulkner* concluded that bad faith under RCW 42.56.565(1) is the most culpable agency misconduct and required more than negligence. *Faulkner*, 183 Wn. App. at 103. The court held that an inmate must "demonstrate a wanton or willful act or omission by the agency" to prove bad faith. *Id*. at 103. That court looked to *Black's Law Dictionary* to further clarify that "'[w]anton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not.'" *Id*. at 103-04 (quoting BLACK'S LAW DICTIONARY 1720 (9th ed. 2009)). Under this standard, "Penalties are owed when an agency acts unreasonably with utter indifference to the purpose of the PRA." *Id*. at 105.

After analyzing the facts of the case before it, the *Faulkner* court concluded the Department had not acted in bad faith. *Id*. at 107. The inmate in *Faulkner* had requested a completed mail log and mail rejection notice. *Id*. at 97. The Department sent the inmate a blank mail log versus the completed log he had requested. It also failed to provide the rejection notice. *Id*. at 97-98. When the inmate appealed, the Department conducted a second search, but could only find the mail log. It contacted the inmate, provided the mail log, and informed him that the rejection notice could not be located. *Id*. at 98. On appeal, the court concluded that the Department timely responded to

the inmate's request and made a reasonable effort to find the responsive documents, and therefore the inmate had failed to show wonton or willful misconduct. *Id*. at 107.

As is evident, bad faith requires a wonton or willful act or omission by the agency. We next turn to Curtis's challenge to the findings of fact.

III.    FINDINGS OF FACT

Curtis challenges findings of fact 2, 3, and 4 arguing they are unsupported by substantial evidence. We disagree.

A.    Findings of Fact 2 and 3

Curtis argues that findings of fact 2 and 3 are unsupported by substantial evidence because he later clarified his records request. Finding of fact 2 states that Curtis's initial request resulted in confusion that followed the request throughout the process. Finding of fact 3 states that because Curtis's request was not clear, Department staff's attempts at seeking clarification as to what was required in the search for documents yielded inaccurate guidance.

We conclude that finding of fact 2 and 3 are supported by substantial evidence. The record contains multiple examples of the Department staff not recognizing what records Curtis was requesting, whether such records were created through agency business, and whether messages in JPay were subject to disclosure. The initial confusion resulted from Curtis's request for messages from a "J[P]ay Representative." CP at 337. Although Curtis's clarification of his request at the administrative appeal was clearer, Department staff responsible for the search were never instructed to search for messages generated by the JPay system. But this was a mistake that arose out of confusion.

The record shows that the Department staff did not realize that the messages Curtis requested were created by the agency's use of the JPay system to send the rejection messages, but the JPay messages were not printed, downloaded, or otherwise used consistent with the policy-informed definition of the term "use." Therefore, the agency believed that such messages were not subject to the PRA. Because the record shows the Department was understandably confused regarding the nature of the requested records, findings of fact 2 and 3 are supported by substantial evidence.

B.      Finding of Fact 4

Curtis argues that finding of fact 4 is unsupported by substantial evidence because he told the Department what records he was requesting, and therefore, its failure to conduct a search of the JPay system was bad faith. He further argues that the evidence shows the Department ignored his clarification in his appeal, which was a bad faith attempt to prevent disclosure. We disagree.

We conclude that finding of fact 4 is supported by substantial evidence. The record contains a number of mistakes the Department made in communicating Curtis's request, including imprecisely describing the record request to staff and confusion over whether Curtis's request fell within the scope of the Department's PRA policy. However, Curtis fails to show how these mistakes constitute a deliberate attempt to prevent disclosure of the requested records. Indeed, throughout the process, the Department communicated with Curtis multiple times to clarify his request, confirmed with him that he was entitled to request agency records, and encouraged him to clarify the Department's interpretation of his records requests. The Department also provided him with the responsive records prior to the trial court's decision. Based on the record, the trial court's finding that the Department did not attempt to hide the records from Curtis is supported by substantial evidence.

IV.     BAD FAITH ANALYSIS

Curtis forwards multiple reasons why the trial court erred in concluding the Department did not act in bad faith.  Curtis argues that the Department's failure to produce its rejection messages was not due to incompetence or error, but was a deliberate attempt to prevent disclosure of public records.  He also argues that the Department's reliance on his initial PRA request, when he submitted a clarification to that request in his appeal, was not a mere misunderstanding or neglect as the trial court found.  Curtis further argues that the Department's interpretation of the PRA to exempt records originating from the Department personnel that are sent through the JPay system is farfetched and indefensible.

Viewing Curtis's allegations through the lens of *Faulkner*, Curtis must demonstrate that that the Department engaged in a wanton or willful act or omission, or that it acted "unreasonably with utter indifference to the purpose of the PRA."  *Id.* at 105.  But, in light of the trial court's findings, which we conclude above are supported by substantial evidence, the Department did not act in bad faith.  Rather, it timely communicated with Curtis, made a reasonable search for the requested records, and reasonably complied with its PRA policy.

The Department made a reasonable effort to find the requested records.  The Department tried to identify what records Curtis was requesting by sending Curtis at least two letters restating his request.  In each of its communications with Curtis, the Department requested additional clarification or encouraged Curtis to reach out with additional questions.  Once it sent the confirmations to Curtis, the Department reached out to staff to conduct both searches, and the record shows staff searched several locations for those records.  The Department communicated promptly with Curtis throughout the process, and encouraged Curtis to further clarify what records he wanted.  The Department also recognized that if the records were used in agency business they

10

were subject to disclosure, but the Department erred by communicating imprecisely and failing to recognize the requested JPay messages originated from the Department.

While Curtis correctly argues that he provided clarification about his request and the Department erred in relying on his initial request, the Department did recognize, based on Curtis's later clarification that the records pertained to a message rejection from the Department, but it failed to identify for the people conducting the searches that the records originated from the Department.

Curtis's argument that the Department's interpretation of its policy is indefensible is similarly unsupported by the record. The Department stated in its final communication with Curtis that if the records he was requesting had been used in agency business, he should clarify his request and the Department would provide them. The Department also requested additional clarification in its first response to Curtis. Further, the Department provided the records prior to the trial court's decision. The record does not support Curtis's assertion that the Department interpreted its own policy so as to deliberately exclude records used in agency business sent through the JPay system.

Based on the record, the Department conducted a reasonable search for the records and complied with its PRA policy. The evidence does not show the Department's failure to provide the rejection messages to Curtis resulted from wanton or willful misconduct. Therefore, under the bad faith standard established in *Faulkner*, we conclude that the trial court did not err in concluding there was no bad faith.

## ATTORNEY FEES

Curtis asks us to award attorney fees. RCW 42.56.550(4) allows a party that prevails against an agency in a PRA action to an award of attorney fees. Because Curtis does not prevail in his appeal of the trial court's ruling on bad faith, we do not award attorney fees.

11

CONCLUSION

We affirm the trial court's ruling that the Department did not act in bad faith. We also affirm its dismissal of Curtis's penalty claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, C.J.

_____
Lee, J.