IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DERRICK HANEY, | ) | No. 39608-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Derrick Haney is an inmate with the Washington State Department of Corrections. He prevailed in an action against the Department under the Public Records Act (PRA), chapter 42.56 RCW, and was awarded $75,440 in penalties and an additional $28,470 in attorney fees and costs. The Department appeals, arguing it did not violate the PRA and, even if there was a violation, penalties were not appropriate because Mr. Haney did not prove bad faith. We disagree with the Department's position

regarding the PRA violation, but we agree that the trial court erred in finding bad faith.

We therefore reverse the award of penalties and remand for further proceedings.

FACTS

On November 29, 2017, a Department classifications counselor, Joshua Largent, initiated a regular classification review of Derrick Haney, an inmate at the Airway Heights Corrections Center. The actual review occurred on January 5, 2018.

"Classification reviews are an informal process and can vary depending on the nature of the review and the specifics of the situation." Clerk's Papers (CP) at 41. Department officers use a custody facility plan in the classification process. The custody facility plan is generated by the offender management network information (OMNI) computer program. When a new custody facility plan is drafted, many fields are generated automatically based on prior entries or computer-generated information. Staff members can make manual entries to the custody facility plan in order to make corrections or update an inmate's information. A classifications counselor might rely on personal interactions with an inmate to learn about changes to employment, programming, or infractions.

Mr. Haney's 2017-2018 classification review was "very routine." CP at 42. He "did not request or receive a transfer. His classification or custody level did not change."

*Id.* "Because of the routine nature of this review, [Mr. Largent] would not have reviewed a large number of records." CP at 232. At their meeting to discuss the review, Mr. Haney had signed a classification hearing notice and appearance waiver form, that informs inmates they could make a PRA request for records "'used in your classification process.'" *Id.* at 307.

During the January 5 meeting, Mr. Largent conducted a risk assessment for Mr. Haney using the "Washington One" assessment tool. This was a new tool that helps assess an inmate's risks and needs and assists with a case plan for an inmate. Many custody facility plans refer to Washington One assessments for programming needs and education. When the Washington One tool was first introduced, the classifications counselor was "not especially clear how" the tool "worked" with the custody facility plan. CP at 233. Mr. Largent considered "the [Washington One] and classification process [as] two separate but complementary procedures." *Id.*

On January 9, 2018, Mr. Haney submitted a PRA request for "'[a]ll the records used in [his] January 2018 classification process.'" CP at 304. The Department received the request on January 17, 2018, and indicated a full response would be provided by February 20, 2018.

3

No. 39608-8-III
*Haney v. Dep't of Corr.*

After receiving the records request, Department staff contacted the classifications counselor, Joshua Largent. Mr. Largent originally indicated he had no responsive records. The Department deemed this response to be the result of confusion and followed up by asking, "'What did [you] use to review the offender's classification? If they are OMNI screen, etc., I need to get that information.'" CP at 112. Mr. Largent then provided the following updated response:

> I used the following Omni screens: Sentence information, Chrono's, Prison discipline, Screening & Restriction, Segregation Management, Onbase, [1] Programs, work supervisor, I completed the Washington one assessment with the Offender, I used the needs and goals to identify the offenders [sic] risk area, I used offender reports, I used the program summary screen, and also talked to unit staff.

*Id*. at 127-28.

Mr. Largent subsequently gathered 42 pages of records related to his response. The following is an itemization of those 42 pages:

| Initial Disclosure | Clerk's Papers |
| --- | --- |
| OMNI judgment and sentence prison page | 143 |
| OMNI offender movement history | 144-47 |
| OMNI program summary page | 148-50 |
| OMNI prohibited placements page | 151 |
| OMNI incoming transport/job screening checklist | 152-54 |

---

[1] OnBase is a court document management system.

4

| Initial Disclosure | Clerk's Papers |
|---|---|
| Criminal conviction record history main screen | 155 |
| OMNI WA One case management plan showing assessment results | 156-58 |
| OMNI security threat group offender info page | 159 |
| OMNI Washington One offender case plan results | 160-62 |
| OMNI indeterminate sentence review board screen | 163 |
| Drug/alcohol tests page | 164 |
| Sex offender registry screen | 165 |
| Program referral search page | 166 |
| Maintain inmate status page | 167-68 |
| Personal characteristics page | 169-71 |
| Offender information summary page | 172-74 |
| OMNI legal face sheet | 175-84 |

After receiving the classification counselor's response, the Department advised Mr. Haney it had obtained responsive records and Mr. Haney requested the records be e-mailed to his mother. The Department e-mailed the records as requested on March 7, 2018. On April 10, 2018, Mr. Haney contacted the Department's records unit, indicating his mother had received the e-mail and mistakenly deleted it. Mr. Haney requested the record be re-sent. On April 16, 2018, the Department sent an additional e-mail with the records pursuant to Mr. Haney's request. Public records staff had a phone conversation with Mr. Haney's mother on April 27, 2018. That same day, the Department sent a third

e-mail to Mr. Haney's mother with the record. At that point, Mr. Haney's mother confirmed receipt of the records.

On February 21, 2019, Mr. Haney filed suit against the Department, alleging a violation of the PRA. After receiving notice of the suit and some discovery requests, the Department reassessed Mr. Haney's PRA request. As a result of its reassessment, the Department produced an additional 187 pages of documents to Mr. Haney on December 23, 2019.

The following is an itemization of the 187 pages of supplemental records sent to Mr. Haney:

| Supplemental Disclosure | Document Description | Clerk's Papers |
|---|---|---|
| OMNI Program Summary | Previously disclosed, *see* CP at 148-50, but this version contains information obscured until clicking a "view all" drop-down on OMNI. | 334-35 |
| OMNI Job Screen Checklist and Classification Review | Previously disclosed, *see* CP at 152-54, but this version contains full text previously obscured by a drop-down on OMNI. | 336-40 |
| OMNI Case Plan | Previously disclosed under the name "OMNI Washington One Offender case plan results," *see* CP at 160-62, but this version was printed with a date range starting after January 4, 2017. | 341-42 |

| Supplemental Disclosure | Document Description | Clerk's Papers |
|---|---|---|
| OMNI Behavior Observations | Previously disclosed under the name "OMNI Washington One Offender case plan results," *see* CP at 160, but this version contains full text previously obscured. | 343-46 |
| Earned time document | Not previously disclosed. | 347 |
| Judgment & Sentence | Not previously disclosed. | 348-66 |
| OMNI Chronos | Not previously disclosed. Printed with a date range starting after January 4, 2017. | 367-68 |
| OnBase documents | Not previously disclosed. The Department explained it provided a full set of documents because Counselor Largent was away on leave and could not be consulted regarding which OnBase documents he reviewed. | 369-483 |
| Washington One Assessment results | Previously disclosed, *see* CP at 156-58, but this version included information from 2016. | 484 |
| Washington One Assessment questions | Not previously disclosed. | 485-503 |
| February 6, 2018 Custody Facility Plan | Not previously disclosed. Full version and offender version provided. | 504-10 |
| Classification Hearing Notice/Appearance Waiver | Not previously disclosed. | 511 |
| January 12, 2017 Custody Facility Plan | Not previously disclosed. | 512-20 |

7

In March 2020, the Department moved for an order to show cause. The Department asserted that the PRA's one-year statute of limitations barred Mr. Haney's PRA action. It also argued Mr. Haney had not requested identifiable records, the Department provided all responsive records, and Mr. Haney was ineligible for any penalties because he could not show bad faith. The trial court ruled in favor of the Department on the statute of limitations argument and dismissed Mr. Haney's claims. This court reversed that decision in an unpublished opinion, concluding Mr. Haney filed his complaint approximately one month before the expiration of the statute of limitations. We then remanded the matter to the superior court for review on the merits. *Haney v. Dep't of Corr.*, No. 37852-7-III, slip op. at 22 (Wash. Ct. App. May 19, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/378527_%20unp.pdf.

Following remand, the Department moved for judicial review and argued Mr. Haney's PRA request was not valid because it was vague and did not seek identifiable records, or in the alternative that the Department's search was reasonable.

The trial court issued an initial order rejecting the Department's arguments on October 31, 2022. In this order, the court reasoned the Department had violated the PRA by failing to disclose various documents, including the Washington One assessment questions and other documents contained in Mr. Haney's Department file. The court also

8

determined the Department acted in bad faith when it "negligently" failed to provide

responsive documents. CP at 309. At the time of the October 31 order, the trial court did

not have copies of the Department's 187-page PRA supplement. The court therefore

deferred ruling on penalties until the parties could provide additional information,

including the 187 pages of supplemental documents. An additional hearing was set for

January 27, 2023.

The matter went forward as scheduled. Based on the parties' supplemental

submissions, the trial court determined two batches of documents had been improperly

withheld for a total of 656 days—from the date of the Department's initial response on

March 7, 2018, until the date they were provided on December 23, 2019. The court's

order assessing penalties identified the documents as follows:

> First, there is the Washington One Assessment which was originally
> identified by Mr. Largent on January 26, 2018, response to the PRA
> request. Second, there are documents that were provided in the initial
> response but in its December 23, 2019, disclosure included information
> from drop down menus and full text information. 12/15/22 Declaration of
> D. Vaughan, p. 3-4. The court finds that this consists of seven documents
> from the December 23, 2019, supplemental disclosure on pages 1-35,
> 179-187.

*Id*. at 608.

In assessing penalties, the court found two mitigating factors: (1) the Department

acted in good faith and in honest, timely, and strict compliance with the PRA procedural

requirements, and (2) the Department assisted Mr. Haney by resending the documents

to his designated recipient on multiple occasions. The court found the following four

aggravating factors: (1) lack of a proper employee training or document tracking, (2) bad

faith and unreasonable explanations of the Department's noncompliance, (3) bad faith

argument suggesting Mr. Haney had colluded with another inmate to manipulate the PRA,

and (4) the need to deter future misconduct considering the Department's large size in

terms of employees and offenders it oversees.

Based on these findings, the trial court issued a penalty for the first wrongly

withheld document at $80 per day for 656 days. In addition, the court issued a per day

penalty of $35 per day for 656 days for improperly withholding the complete versions of

the second batch of documents, for a total penalty of $75,440. In addition, the court

awarded Mr. Haney reasonable attorney fees and costs totaling $28,470.

The Department now appeals from the superior court's orders.

## ANALYSIS

The PRA is a strongly worded public mandate, requiring citizens be afforded

access to public records. *Belenski v. Jefferson County*, 186 Wn.2d 452, 456-57, 378 P.3d

176 (2016). The PRA requires all state and local agencies to make public records

available for inspection and copying unless the record falls within an exception to

disclosure. RCW 42.56.070(1). Agencies are required to conduct "adequate searches for responsive records, and an inadequate search is treated as a PRA violation." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021).

A party who has been denied records under the PRA may file suit and seek an award of penalties. RCW 42.56.550(4). If the party seeking relief is an incarcerated person, penalties require a showing of bad faith. RCW 42.56.565(1).

We review substantive PRA disputes de novo. RCW 42.56.550(3). But penalty determinations are reviewed for abuse of discretion. *Hoffman v. Kittitas County*, 194 Wn.2d 217, 224, 449 P.3d 277 (2019). A court abuses its discretion when it commits legal error. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). And legal errors are reviewed de novo. *State v. Ramirez*, 191 Wn.2d 732, 740-42, 426 P.3d 714 (2018).

## *PRA violation*

The trial court found the Department violated the PRA; however, the nature of this ruling is unclear. In its order dated October 31, 2022, the court determined the Department violated the PRA by failing to disclose Mr. Haney's Washington One assessment, prisoner discipline reports, behavior reports, a December 2017 infraction report, behavior logs, and an Omni Chrono's page. But in the court's order on penalties,

the court focused solely on the Washington One assessment and the Department's failure to include information from drop down menus in the initial 42-page disclosure.

Regardless of the lack of clarity in the trial court's rulings, we review the issue of PRA violations de novo. RCW 42.56.550(3). Here, Mr. Haney requested "'records used'" in his January 2018 classification process. CP at 304. The classifications counselor, Joshua Largent, was the individual who conducted the review and who would have been involved in any use of those documents. Thus, the Department's response to Mr. Haney's request was governed by what Mr. Largent did to conduct Mr. Haney's classification review. We disagree with Mr. Haney that his written request encompassed documents that the Department may have relied on in creating the documents used by Mr. Largent.

When asked to describe the documents used in Mr. Haney's classification review, Joshua Largent provided a general summary that identified two classes of records. First there were the following Omni screens: "Sentence information, Chrono's, Prison discipline, Screening & Restriction, Segregation Management, Onbase, Programs, [and] work supervisor." CP at 127-28. Second, there was information related to the Washington One assessment. According to Mr. Largent, he "used the needs and goals to identify the offenders [sic] risk area, I used offender reports, I used the program summary screen, and

also talked to unit staff." *Id*. at 128. Notably, the summary of the Washington One

assessment intermixed information gained from verbal discussions with information

obtained from documents.

After providing the general summary, Mr. Largent gathered the 42 pages of

responsive materials that were ultimately provided to Mr. Haney. The 42 pages consisted

entirely of printed screens from OMNI. One of the OMNI screens provided the

Washington One offender case plan results.

Comparing the classification counselor's summary with the initial 42-page

disclosure and the Department's 187-page supplement, there are some notable omissions.

First, the OMNI screens provided by Mr. Largent did not include the Chrono's page.

Second, no OnBase documents were disclosed. Third, some of the OMNI screens

provided by Mr. Largent did not include the full text of drop-down menus. And finally,

while Mr. Largent provided a copy of the Washington One assessment, he did not provide

copies of the questions used to generate the assessment.[2]

---

[2] Neither the parties nor the trial court addressed whether Mr. Largent's 42-page disclosure should have included the custody facility plan and classification hearing notice. Mr. Largent did not reference these documents in his general summary. Given the lack of a supporting record or briefing, we do not address this issue.

The parties debate whether the classifications counselor failed to provide "offender reports" mentioned in his summary of the Washington One materials. *See* CP at 305.

The information provided by Mr. Largent fails to clarify whether offender reports referred to reports of information by Mr. Haney or whether it referred to some sort of written reports. We need not resolve this ambiguity. The OnBase records supplied by the Department in its 187-page supplement includes numerous "offender" documents, including complaints, grievances, and other requests. Thus, the failure to provide "offender reports" appears to be covered by our determination that the 42-page disclosure failed to include OnBase documents.

Based on the foregoing discrepancies between the documents Mr. Largent said he used and the 42 pages actually provided to Mr. Haney, we agree with the trial court that the Department violated the PRA.

## Bad faith and the availability of penalties

When an incarcerated person prevails on a PRA claim, the availability of penalties turns on whether the agency's denial of responsive records was the product of "bad faith." RCW 42.56.565(1). "[T]o establish bad faith, an inmate must demonstrate a wanton or willful act or omission by the agency." *Faulkner v. Dep't of Corr.*, 183 Wn.

14

App. 93, 103, 332 P.3d 1136 (2014). This is a high level of culpability, "associated with the most culpable acts by an agency." *Id*. at 105. Penalties based on bad faith "are owed when an agency acts unreasonably with utter indifference to the purpose of the PRA." *Id*. "By incorporating the bad faith requirement, the legislature allows penalties for inmates only when the conduct of the agency defeats the purpose of the PRA and deserves harsh punishment." *Id*. at 106. A trial court has "discretion" to find bad faith, subject to compliance with governing legal framework. *Id*. at 103.

The trial court here determined "[t]he Department acted in bad faith when it negligently failed to provide, at a minimum, documents identified by [classifications counselor Joshua] Largent." CP at 309. This assessment failed to reflect the applicable legal standard. Mr. Largent may have been confused when he evaluated the scope of Mr. Haney's PRA request. For example, although he understood the Washington One assessment was used as part of the classification review, he considered the assessment different from the classification review and did not include the Washington One assessment questions in his response. And Mr. Largent may have been sloppy when he compiled the 42 pages of documents. For example, he did not include the full text of drop down menus from the OMNI pages. But confusion and sloppy work are not generally indicative of high levels of culpability. They sound in negligence, which is insufficient to

15

establish bad faith. *See Faulkner*, 183 Wn. App. at 104 (bad faith "more culpable" than "negligence").

The trial court invoked the wrong legal standard for determining bad faith. We therefore remand with instructions for the court to reassess the issue of bad faith pursuant to the legal framework set forth in this opinion and this court's decision in *Faulkner*. In assessing the threshold question of bad faith, the trial court must focus on the reasons behind the agency's failure to provide responsive records under the PRA. Arguments raised during litigation that were not at issue at the time of denial—such as whether Mr. Haney was coordinating his PRA request with other inmates—are not relevant to the threshold analysis. If, on remand, the trial court again finds the Department withheld records in bad faith it should reassess, on a separate basis, the issue of penalties pursuant to the framework established in *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010).

## ATTORNEY FEES AND COSTS

In addition to awarding PRA penalties, the trial court imposed $28,470 in attorney fees and costs. Unlike what is true of penalties, the PRA does not restrict an inmate's award of attorney fees and costs. *See* RCW 42.56.550(4). But a successful PRA claim does not necessarily result in a full award of fees. The lodestar method applies to PRA

calculations of attorney fees. *Sanders v. State*, 169 Wn.2d 827, 869, 240 P.3d 120 (2010).

Under this method, a court must "discount[ ] hours spent on unsuccessful claims,

duplicated effort, or otherwise unproductive time." *O'Neill v. City of Shoreline*, 183

Wn. App. 15, 25, 332 P.3d 1099 (2014).

Our order remanding this matter on the issue of bad faith may change the trial

court's assessment of the hours reasonably spent on successful claims by Mr. Haney's

attorney. As a result, the trial court on remand shall reconsider the issue of what attorney

fees Mr. Haney may be entitled to based on his attorney's efforts at successful arguments

in the trial court.

On appeal, Mr. Haney requests an award of attorney fees and costs under

RAP 18.1 and RCW 42.56.550. Because Mr. Haney and the Department have both

prevailed in part on review, we deny Mr. Haney's request for attorney fees and costs

on appeal.

## CONCLUSION

The Department violated the PRA when it failed to disclose all records used by

counselor Joshua Largent during Mr. Haney's 2017-2018 classification review. However,

the trial court utilized the incorrect legal standard in assessing whether the Department's

PRA violation was based on bad faith. We therefore reverse the trial court's award of

No. 39608-8-III
*Haney v. Dep't of Corr.*

PRA penalties and remand for reconsideration of the issue of penalties based on the legal standard set forth in this opinion. We also remand for reconsideration of the attorney fees reasonably incurred by Mr. Haney during the trial court proceedings pursuant to the lodestar method.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Cooney, J

18

No. 39608-8-III

FEARING, J. (concurring) — The majority writes, "Agencies are required to conduct 'adequate searches for responsive records, and an inadequate search is treated as a PRA [Public Records Act] violation.'" Majority at 11 (quoting *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021)). I disagree with this statement of the law as a general rule. In *Cantu v. Yakima School District No. 7*, 23 Wn. App. 2d 57, 116, 514 P.3d 661 (2022) (Fearing, J., concurring in part, dissenting in part), I explained that instead of shielding the government agency from liability for failing to produce a requested record, the adequacy of the search should influence the penalty to be imposed by the superior court in the event the government agency fails to produce a record.

The party requesting records in *Cantu v. Yakima School District* was not incarcerated such that bad faith of the government agency did not come into question. In the context of a PRA suit by an incarcerated individual, I would adjudge the adequacy of the search to pose relevance to liability. The reasonableness of the search should influence the decision of whether the agency engaged in bad faith.

I otherwise concur in the majority's decision.

_____
Fearing, J.